WOOLEY and another, Respondents, vs. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, Appellant.

*May 14—June 4, 1912.*

*Railroads: Demurrage charges: Recovery back: Rules: Place of delivery of cars: Duress: Voluntary payment: Evidence: Verdict: Omitted matters: Presumption on appeal.*

1. Under a rule of a railway company providing that when delivery of freight on a designated carload delivery track or private siding could not be made on account of such track being fully occupied, or for any other reason beyond its control, delivery should be made at the nearest available point, demurrage could not be charged until the free time for unloading had elapsed after the car was placed at the nearest available point where it could be unloaded and, perhaps, notice given to the consignee.

2. A rule that "cars for unloading shall be considered placed when such cars are held awaiting orders from consignors or consignees," does not apply to the case of cars which by contract are to be unloaded on a designated carload delivery track, and which for some reason cannot be delivered there, but applies to cases where the carrier is ready to make delivery and the consignor or consignee neglects or refuses to designate the place where delivery is desired.

3. Proof that consignees of paving materials, on being offered the use of any available tracks for the purpose of unloading, replied that they "wanted the cars placed as soon as possible to work so that they could unload and avoid teaming expense," does not show refusal on their part to accept delivery on any track except one previously designated.

4. The fact that plaintiffs were in urgent need of money due them on a paving contract from a railway company, and that the latter refused to pay a sum of over $6,000, so due, until a disputed bill of $434 for demurrage was settled, would not be sufficient to establish duress in the payment of such demurrage charge.

5. Where, however, the evidence was such that the jury might have found that such payment was made upon the understanding that the matter would be subject to investigation and to readjustment in case of error, the supreme court will not reverse a judgment in favor of the contractor because of an

erroneous finding of duress by the jury, but will, in support of the judgment, presume a finding by the court in accordance with such evidence.

[6. Whether or not, since the enactment of ch. 362, Laws of 1905, voluntary payment is a defense to a claim to recover a wrongful or excess charge exacted for demurrage, not decided.]

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

The plaintiffs are copartners in the city of La Crosse, doing business under the name of Wooley & Hanson. On or about May 30, 1906, plaintiffs and defendant entered into a contract whereby in consideration of the sum of $6,605.02 plaintiffs agreed to furnish the material and to do certain paving work on and around the station grounds of defendant in the city of Madison. The contract provided that the railway company was to furnish free transportation over its line for materials entering into the work. In September, 1906, the work was completed in accordance with the contract, and the defendant through its agent at La Crosse tendered its check for the above amount to plaintiffs, with the condition that they sign a receipt in full and also pay the sum of $434 claimed by the defendant to be due as demurrage on account of plaintiffs' failure to promptly unload cars. The amount due on the contract was paid to plaintiffs and they in turn paid the $434 demurrage. Thereafter plaintiffs brought this action to recover the sum paid for demurrage, alleging that this amount was paid under duress owing to plaintiffs' financial condition and need of money, and with the understanding and agreement between the parties that the payment was made under protest and with a view to readjustment and refund if the charges were found to be incorrect. The complaint also alleged that any delay in unloading material on account of which demurrage was claimed was due to defendant's failure to furnish sufficient track space for the placing of cars for unloading. The answer was a general

denial of the allegations of the complaint. The jury returned the following special verdict:

"(1) Was there any sum due to the defendant from the plaintiffs for demurrage on cars on the 21st of September, 1906? *A.* No.

"(2) If you answer the foregoing question 'Yes,' then what was the sum then due? *A.* $——.

"(3) Did the defendant on the 21st of September, 1906, refuse to pay to the plaintiffs the amount due to them upon their contract for work done at Madison except upon condition of the payment by the plaintiffs of the sum of $434 claimed to be due for demurrage on cars? *A.* Yes.

"(4) If you answer question No. 3 'Yes,' then did such refusal on the part of the defendant so affect the plaintiff *Wooley's* mental condition as to render him incompetent to contract with the exercise of his free will power? *A.* Yes."

On such verdict judgment was entered for plaintiffs. Defendant appeals.

For the appellant there was a brief by *William G. Wheeler,* attorney, and *Edward M. Smart,* of counsel, and oral argument by *Mr. Smart.*

*Frank Winter,* for the respondents.

BARNES, J. Appellant assigns as error (1) refusal of the court to set aside the first finding of the jury and grant a new trial; (2) the instruction given to the jury under question 1 of the special verdict; (3) refusal of the court to grant judgment for the defendant on the ground that a voluntary payment of the demurrage charges had been made; (4) in instructing the jury as to what would constitute duress.

The rules governing demurrage charges were offered in evidence. But two of them would seem to have any application to the case. These are secs. 1 and 2 of rule 5. Sec. 1 provides that "cars containing freight to be delivered on carload delivery tracks or private sidings, shall be placed on the track designated as soon as the ordinary routine of yard work

will permit. When delivery cannot be made on account of such track being fully occupied or for any other reason beyond control of the carrier, delivery shall be made at the nearest available point."

The material part of sec. 2 reads: "Cars for unloading shall be considered placed when such cars are held awaiting orders from consignors or consignees. . . ."

These two rules would seem to cover different situations. Sec. 1 appears to be applicable here. The cars were to be delivered on a carload delivery track and such track was designated by plaintiffs. If delivery could not be made on this track for any reason, then the railroad company had the right to make delivery at the nearest available point. When it became apparent that cars could not be taken care of on the designated track, we think it was the duty of the defendant to make delivery at the nearest available point where the cars could be unloaded, and perhaps to advise the plaintiffs when the cars were so placed. There was no need of any further direction from the plaintiffs. The rule specified what should be done in case delivery could not be made promptly at the place selected. Sec. 2 would appear to apply to a case where the carrier was ready to make delivery and the consignee neglected or refused to designate the place where delivery was desired. In such a contingency the free time would begin to run from the time the carrier was ready to make delivery. We cannot find in the evidence any showing that any of the cars were in fact delivered to the nearest available point, or that any attempt was made to spot them at a place where they could be unloaded, except on the designated tracks, with one or two exceptions. As to these last exceptions, cars were unloaded at the place where they were spotted, and apparently within the required period.

The evidence shows that plaintiffs so ordered their material that it came in a rush and in such a manner that they were unable to take care of it and find a place to store it until

it was needed for use, and there is likewise considerable evidence tending to show that there was delay in unloading, occasioned by the fact that plaintiffs could not take care of the contents of the cars. This in itself does not establish the right of the defendant to collect demurrage, unless it is also shown that the plaintiffs failed to unload the cars consigned to them within the required time.

It is also contended by the defendant that plaintiffs refused to accept delivery of the cars at any point except on the designated tracks referred to, and that consequently defendant was not called upon to spot the cars at any other place, and was entitled to compute the time from which free time began to run from the hour it was ready and willing to spot the cars. If the fact was as claimed, it would be difficult to find any flaw in the conclusion reached. If plaintiffs refused to accept any delivery except on the designated track or tracks, it would be an idle ceremony for the defendant to make delivery elsewhere, and it would be excused from so doing. But the evidence of such a refusal is weak. It is to the effect that plaintiffs were offered the use of any available tracks for the purpose of unloading, and that "they replied that they wanted the cars placed as soon as possible to work so that they could unload and avoid teaming expense." This language can just as well be construed as expressing a wish as a refusal. It does not appear to whom this statement was made. Furthermore, the plaintiffs' foreman, Stevens, who had charge of the unloading of cars for them, testified as follows: "Q. Did they offer any cars on any other track except the track you speak of [track B] for unloading? A. No, sir." Inferentially, the plaintiff *Wooley* testified to the same effect.

While the evidence is far from satisfactory, we think it is sufficient to warrant the jury in finding that all of the cars except five were unloaded within forty-eight hours after they were spotted; that as to those five the plaintiffs were justified

in not unloading them because of the contemplated change in plans, which if made would do away with the use of the material therein; that such change was made; that the plaintiffs requested delivery on a designated track; that defendant did not make delivery at the nearest available point of such cars as could not be delivered promptly on such designated track, and that plaintiffs did not refuse to accept delivery at other points than on the designated track. These facts being established, under the construction which we place upon the demurrage rules the plaintiffs were not chargeable with demurrage.

The second error argued relates to an instruction given to the jury in reference to the first question. The court in its instruction simply placed the construction on the rules which we find to be correct, and therefore committed no error.

The appellant contends that the plaintiffs made a voluntary payment of the amount claimed for demurrage and hence there can be no recovery. The jury found that the payment was made under duress and therefore was not voluntary.

"Duress, in its broad sense, now includes all instances where a condition of mind of a person, caused by fear of personal injury or loss of limb, or injury to such person's property, wife, child, or husband, is produced by the wrongful conduct of another, rendering such person incompetent to contract with the exercise of his free will power, whether formerly relievable at law on the ground of duress or in equity on the ground of wrongful compulsion. . . . The question in each case is, Was the alleged injured person, by being put in fear by the other party to the transaction for the purpose of obtaining advantage over him, deprived of the free exercise of his will power, and was such advantage thereby obtained? If the proposition be determined in the affirmative, no matter what the nature of the threatened injury to such person, or his property, or the person or liberty of his wife or child, the advantage thereby obtained cannot be retained. The idea is that what constitutes duress is wholly a matter of law, and is simply the deprivation by one

person of the will power of another by putting such other in fear for the purpose of obtaining, by that means, some valuable advantage of him. The means by which that condition of mind is produced are matters of fact, and whether such condition was in fact produced is usually wholly matter of fact, though of course the means may be so oppressive as to render the result an inference of law." *Price v. Bank of Poynette,* 144 Wis. 190, 198, 128 N. W. 895.

We should have difficulty in reaching a conclusion that the evidence in this case shows a payment under duress, notwithstanding the fact that it is usually a question for the jury to determine the state of mind of the party who claims to have acted under duress. About the only fact shown to establish duress was that plaintiffs were in urgent need of the money due them on the contract, which the defendant refused to pay until its bill of demurrage was settled. This fact would seem to be entirely inadequate to produce such a state of mind as the law contemplates must exist in order to constitute duress. However, we do not think that it was essential to the case of the plaintiffs to show in this instance that the payment was in fact made under duress. The evidence of the agent of the defendant at La Crosse tends to show that he advised the plaintiffs to pay the demurrage so that they could get their money on the contract, and that if no demurrage was legally chargeable they could put in their claim in the usual way and that so much of it as was improperly exacted would be refunded. The agent says this conversation took place before the draft was delivered. This matter of exacting demurrage was a subject of discussion between Mr. Carter, the chief engineer of the defendant, and the plaintiffs, the latter claiming that no demurrage should be charged to them and that the amount due on the contract, aggregating over $6,000, should not be held back because of this alleged claim for demurrage. Mr. Carter, in writing to the plaintiffs under date of September 3d, suggested that they

accept payment of the agent for the amount of the voucher less the demurrage charges, pending an investigation, and clearly carries the idea that if on investigation it was found that the whole or any part of the demurrage bill was improperly exacted a refund would be made.  We think under this evidence the jury might well have found that the defendant waived the right to insist that the payment of the demurrage charges was voluntary, and that it was made with the understanding that the correctness of these charges would be inquired into and that if the charges were erroneous in whole or in part a refund would be made.  The jury made no finding on this question and none was requested.  But in support of the judgment we must presume a finding by the court, the evidence being ample to sustain it.

It may well be doubted whether voluntary payment is a defense since the enactment of ch. 362, Laws of 1905, where an excess charge is exacted for demurrage, but it is unnecessary to pass upon this question and we do not do so.

*By the Court.*—Judgment affirmed.