(84 South. 824)

LOUISVILLE & N. R. CO. v. CAMODY. (8 Div. 205.)

(Supreme Court of Alabama. Dec. 18, 1919.)

1. CARRIERS ☞100(1)—"DEMURRAGE" MEANS DAMAGES FOR DELAY IN UNLOADING WHICH CARRIER CAN COLLECT WHERE CONSIGNEE IS AT FAULT.

The term "demurrage" as related to rail affreightment contracts means damages for detention of cars for which shipper or consignee may become liable under express or implied contracts, based on the carrier's reasonable rules, but no demurrage can be exacted unless the delay in unloading is clearly attributable to the fault of the consignee.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Demurrage.]

2. CARRIERS ☞100(1)—CONSIGNEE NOT LIABLE FOR DEMURRAGE FOR FAILURE TO GIVE BOND TO CARRIER WHERE OWNER CONTESTED.

Where a carrier learned that the possession of consignor was being contested as tortious, carrier could refuse to deliver to consignee on payment of freight, unless consignee would furnish a sufficient bond, but consignee could not be held for demurrage for the sole reason that he failed or refused to give such bond.

Certiorari to Court of Appeals.

Petition of M. C. Camody for certiorari to the Court of Appeals to review and revise the

judgment of said court rendered in the case of Louisville & Nashville R. R. Company v. M. C. Camody, 82 South. 648. Writ granted, and judgment of Court of Appeals reversed, and cause remanded with instructions.

G. O. Chenault, of Albany, for appellant. It was an Alabama contract, and no demurrage was chargeable except, through the fault of the consignee. Section 5614, Code 1907; 4 R. C. L. §§ 317-326.

Eyster & Eyster, of Albany, for appellee. No brief came to the Reporter.

SAYRE, J. Plaintiff's (petitioner's) theory of this case, as stated by the Court of Appeals, was:

"That defendant [Louisville & Nashville Railroad Company, appellant in the Court of Appeals] extorted the payment of the amount claimed, as demurrage, as a condition precedent to the delivery of the two carloads of lumber to plaintiff's consignee, George C. Brown & Co.; that the consignee paid the demurrage under protest, deducted the amount so paid from the price due plaintiff, and in consideration thereof assigned the claim to the plaintiff. Therefore, if the plaintiff was entitled to recover at all, he was entitled to recover under the first count of the complaint as for money had and received."

It further appears from the opinion of the Court of Appeals that defendant offered in the trial court to prove that plaintiff's possession of the lumber when it was delivered to defendant for transportation was tortious; that defendant had notice of that fact before the lumber could be delivered to the consignee; that soon thereafter Stout & Irwin sued defendant for a conversion of the lumber; and that pending an investigation of the title defendant offered to deliver the lumber to plaintiff's consignee, if indemnified, and plaintiff failed to furnish indemnity. The Court of Appeals holds that the trial court erred in sustaining objections to this evidence, and what it has written indicates the opinion that the testimony to which we have referred should have been admitted for the reason that the defendant was under no duty or obligation to deliver the lumber to plaintiff's consignee upon its offer to pay the freight without satisfactory indemnity.

[1, 2] The term "demurrage," as applied to cases arising out of contracts of affreightment by rail, means the damages for the detention of cars to which a shipper or consignee of goods may become liable under an express or implied contract. The theory is that, in the absence of an express contract, the shipper or his consignee impliedly contract to submit to reasonable rules adopted by the carrier for the regulation of shipments; but no demurrage can be exacted by a carrier unless the delay in unloading is clearly attributable to the fault of the consignee. This is the result of the authorities generally. 4 R. C. L. § 317, pp. 864, 865. We have a statute on the subject (article 12 of the chapter on Railroads, Code, § 5598 et seq.), but the provisions of that chapter have no effect upon the question here presented for decision. It will be noted that the ruling under consideration turns upon the proposition that, in the event a dispute arises as to the right of property in shipment, the consignee is in fault unless he offers, not only to pay the freight, but to indemnify the carrier against any loss by reason of its delivery to the consignee. This court has held that when there are adverse claims, and the bailee cannot compel them to interplead, he (the bailee—in this case the carrier) must, at common law, defend himself as well as he may. If he is unwilling to undertake the onus of proving a title superior to that of his principal, he may retain possession, and await an action by the adverse claimant. Powell v. Robinson & Ledyard, 76 Ala. 423. This means, of course, that the carrier, in the circumstances named, may retain possession unless the consignee will make a bond indemnifying him against loss that may arise out of the delivery to his principal of property to which another may have a superior title; but it does not mean that the failure or refusal of the consignee to make such a bond can be attributed to him as a fault. We do not think that a shipper or consignee can be held for demurrage for the sole reason that he fails or refuses to make such a bond. His right in and to the property shipped cannot be made to depend upon his ability, or even his willingness, to indemnify the carrier, and so for that reason he cannot be adjudged in default for his lack of ability or willingness to indemnify.

Writ of certiorari issued, judgment of Court of Appeals reversed, and cause remanded to that court, with instructions to proceed in accordance with the views here expressed.

ANDERSON, C. J., and SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

McCLELLAN and BROWN, JJ., not sitting.