147 So. 891

**UNITED STATES FIDELITY & GUARANTY CO. v. CENTRAL OF GEORGIA RY. CO.**

4 Div. 662.

Supreme Court of Alabama.
March 9, 1933.

Rehearing Denied May 18, 1933.

Coleman, Spain, Stewart & Davies, of Birmingham, for appellant.

608

Powell, Albritton & Albritton, of Andalusia, and Steiner, Crum & Weil, of Montgomery, for appellee.

**FOSTER, Justice.**

This is a branch of a statutory suit on the bond of a state road contractor in which appellee is an intervener. Its claim is for demurrage on carload shipments by railroad of material and supplies used in the construction of the work. On a former appeal, this court held it to be a proper claim against the bond of the contractor. Central of Georgia Ry. Co. v. U. S. F. & G. Co., 223 Ala. 458, 137 So. 36. Other preliminary questions had been settled on another appeal. 222 Ala. 637, 134 So. 18.

The circuit court, on the hearing of this intervention, allowed claims for demurrage which appellant challenges.

On January 25, 1928, there were stored at Andalusia and other points near there for the contractor, Taylor, about forty-three cars on tracks of appellee. It seems that twenty-five of them were in the yards at Andalusia. The others were held on sidetracks at one or more stations several miles from Andalusia, not having reached there. There was evidence that the yards at Andalusia would store about one hundred cars, but "for switching purposes about fifty cars would be as much as we could store and make the placements with." On that day appellee "assigned to R. S. Taylor space for thirteen cars here in Andalusia," and gave him notice of the "constructive placement" of them all. That meant that thereby appellee did of its own volition and without his consent direct that a certain track space in the yard for thirteen cars at a time was set apart for his use, and that all his unloadings must be at that place. The assigned track was not thus designated at his request or because he had any claim upon it, or that it was contiguous to his operations. On that day they had thirteen cars on the assigned track for his unloading, and thereafter continued to keep that number for him on the assigned track. But the other cars consigned to him had been stopped in transit, and were held at various sidings at stations far from Andalusia, to wit, at Gantt, ten miles; Searight, seventeen miles; Theba, twenty-five miles. These cars were carried into Andalusia by the regular freight train, running once a day. By that method the assigned track was refilled not more than once a day. And the practice continued that as soon as they were so sidetracked, notice of "constructive placement" was given, and a charge was made for demurrage after the "free time," though the cars had not reached Andalusia. It seems also that such a charge was made for all the twenty-five cars then at Andalusia, though only thirteen were then made available to the consignee.

It is apparent that the controversy is controlled by the effect of the "assigned space" notice and the rule regulating constructive placements. It does not appear that that was all the space at Andalusia reasonably adapted to such unloadings, nor just how much space for unloading such shipments existed there at the time. It does appear that, other than his shipments, there were at the time an average of twelve cars a day in the yard to other consignees for unloading.

Section 10092, Code, permits demurrage on carload shipments after "forty-eight hours of free time," "computed from seven o'clock A. M. the day following the day legal notice

of arrival is given (having been placed at the accessible point designated by consignee for unloading)." Section 10083 requires delivery at the depot or "in case of * * * track delivery, shall place loaded cars at an accessible place for unloading within twenty-four hours after arrival" (and) carload shipments for track delivery shall be placed at an accessible place for unloading.

■ This court has approved the meaning given to the words "track delivery" and "accessible" in this connection, by the Court of Appeals in the case of Greek-American Produce Co. v. Illinois Central R. R. Co., 4 Ala. App. 377, 58 So. 994, in our case of Boshell v. Receivers of St. L. & S. F. R. Co., 200 Ala. 366, 76 So. 282. That, when a carrier had a "yard" at its terminal, and maintained "team tracks," such team tracks were called accessible, or in smaller places, where it had only sidetracks for unloading, the words "track delivery" and "accessible" refer to such team or sidetracks.

We know of no rule of law nor of a utility commission having jurisdiction of the subject which permits a carrier to limit the unloading space of a consignee, without his consent, and to charge demurrage on cars not unloaded because such space is constantly filled.

An opinion by the Appellate Division of the Supreme Court of New York is here in point in some respects. The carrier had no public track for unloading freight cars at the small town, and only accepted carload shipments to consignee which had private sidings. The railroad did not provide any means to unload its carload lots before they reached the private sidings. It left the cars on sidings far removed, and not accessible to unloading by the consignee until there was space open in his private siding. The question was whether that was a constructive delivery. The court held that there was no delivery until the cars were held for unloading and not while waiting switching to reach the place for unloading. Carrizzo v. New York, S. & W. R. R. Co., 66 Misc. 243, 123 N. Y. S. 173. And it was said that, if the carrier wished to release its cars promptly, it had only to provide the ordinary facility of a track alongside an accessible space. The principle is approved in 1 Michie on Carriers, p. 710.

On another appeal of the same case (145 App. Div. 566, 129 N. Y. S. 914), the opinion says that "the custom had been to make deliveries to the consignee on such tracks, and such delivery of the goods in question was contemplated by the parties." The track had a capacity of eleven cars. The court held that it was a jury question whether the fault was that of the consignee in failing to unload cars or that of the carrier in failing to take out empties and set loaded cars.

It has been held to be for the jury to say whether a carrier had complied with its duty in not spotting cars of coal at the bin of the consignee constructed for that purpose and so used for a long time, in view of the claim that the track there was littered with coal so as to be unusable. Hines v. Thomasville Light & Power Co., 206 Ala. 420, 90 So. 316; New York, N. H. & H. R. R. Co. v. Porter, 220 Mass. 547, 108 N. E. 499.

We understand that by rule section D, note 2, an assigned track is not treated as a public delivery track, and that by item 7, rule 5, when delivery of a car "consigned or ordered to" other than a public delivery track cannot be made on account of the inability of the consignee to receive it, or any condition attributable to consignee, such car may be held at destination or some near available hold point, and there is thereby a "constructive placement."

But we think the first appeal in the New York case, and not the second, is applicable here on account of the difference we have stated, and which is made manifest by the rules just mentioned. The second appeal is predicated upon the statement, not in the first, that the delivery of the goods in question was contemplated by both parties, due to their custom, to be made only upon the private siding of the consignee. It was therefore impliedly so ordered. It may be that, if Taylor had agreed with the carrier upon an assigned space, and that he would receive his shipments there, and not elsewhere, the rule of the second appeal in the New York case would apply, and it would be in the coverage of item 7, rule 5, supra. But such is not the condition here. It was by the determination of the carrier, and by it alone, that Taylor was confined to such "assigned space," so far as the record shows. Taylor had no alternative but to accept deliveries there and not elsewhere, due to conditions over which he had no control. The effect was to force him to so order and regulate his carload shipments as that there would be no more received than could be accommodated on the space assigned to him by compulsion, or to sustain demurrage upon constructive delivery upon inaccessible trackage.

■ Rule 3, note 2, does not direct in what way track may be assigned. We think it cannot be done by the railroad except by agreement with the consignee, express or implied. We also observe that, to justify a "constructive placement" under item 7, rule 5, which we have stated, two conditions are necessary: (1) That the car be consigned or ordered (expressly or impliedly) to the assigned track, and (2) that it cannot be so placed because of a condition attributable to consignee.

■■ We think that, to justify a constructive placement, it must appear that the con-

signee required or contracted expressly or impliedly for all his carloads to be spotted on his private (or assigned track), and that due to his own conduct the railroad could not so place them. 10 Corpus Juris, 467, note 35. For "no demurrage can be exacted by a carrier unless the delay in loading is clearly attributable to the fault of the consignee." Louisville & Nashville R. R. Co. v. Camody, 203 Ala. 522, 84 So. 824; Granger v. Davis (C. C. A.) 2 F.(2d) 695.

But, when the railroad for its own purposes designated the track so assigned, and declared that thereby it would spot none of the consignee's cars elsewhere, though other accessible track was available, and such arrangement was not agreed to by the consignee, and such cars were "neither consigned nor ordered to" such assigned track, by the consignor nor consignee, expressly nor impliedly, and especially if the railroad had at the terminal other accessible space for track delivery, the rules do not authorize a charge for demurrage upon constructive placement merely because such assigned space is kept filled, without spotting on accessible tracks, nor attempting to do so, whether the cars are detained at some other holding point in the yard or elsewhere under such circumstances is immaterial. An "actual placement," rule D, note 1, and by our statutes, sections 10083 and 10092, Code, is the spotting of cars in an accessible position for unloading. Miller v. Ga. R. R. Co., 88 Ga. 563, 15 S. E. 316, 18 L. R. A. 323, 30 Am. St. Rep. 170; 4 R. C. L. 865, notes 10 and 11; Boshell v. Receivers of St. L. & S. F. R. R. Co., supra.

A "constructive placement" is controlled by the rules we have described. But there cannot be a constructive placement unless the cars so placed are "consigned or ordered to" the assigned or private track. If this is known to be the only arrangement which the consignee wishes, and no other provision is made which is accessible, it will be considered as so "ordered" by the consignee, and the second appeal in the New York case applies. Such is also the Mississippi case, N. O. & N. E. R. Co. v. George, 82 Miss. 710, 35 So. 193, and Chicago & N. W. R. Co. v. Menasha Paper Co., 159 Wis. 508, 149 N. W. 751; Wooley v. Chicago & N. W. R. Co., 150 Wis. 183, 136 N. W. 616; 10 Corpus Juris, 467, note 35; Menasha Paper Co. v. N. W. R. Co., 241 U. S. 55, 36 S. Ct. 501, 60 L. Ed. 885.

"The demurrage rules promulgated by a carrier must in all instances be construed most favorably to the shipper, and the court will not give a rule a broader construction than its language indicates, unless the reason of the thing and the surrounding circumstances require it to do so." 10 Corpus Juris, 468, § 741.

It is true that the railroad was required to accept all cars for shipment, unless it declared an embargo, but, when they arrived at Andalusia, since there was no agreement or order by the consignor or consignee to the contrary, they should have been placed on accessible tracks for unloading, if available, and there remain during the free time before the right to demurrage begins. If there was not sufficient trackage, it was not attributable to the shippers. If the carrier wishes protection, it should have declared an embargo—20 Corpus Juris, 404; C. & O. R. R. Co. v. O'Gara, King & Co., 144 Ky. 561, 563, 139 S. W. 803—with the approval of the public service commission.

The fact that the cars came in a rush and the railroad was unable to care for them at once did not of itself establish the carriers' right to demurrage, and not unless the other conditions to such claim occurred. Wooley v. Chicago & N. W. R. Co., supra.

The only fault which we find with the basic principle on which the circuit court sustained the theory of constructive placements applicable to the facts of this case is that there is no agreement shown, express or implied, by the consignor or consignee, under which it may be held that the cars in question were "consigned or ordered to" the assigned track, and therefore governed by the rule applicable to constructive placements. An "actual placement" was therefore necessary before a right to demurrage was set in motion.

We need not here consider the question of whether there was a variance, or insufficiency, of averment in the complaint, to sustain the claim for cars on hand January 25, since the petition fixes the claim as being in February and March. That situation need not occur on another trial.

We do not think it is necessary to discuss principles which apply to other assignments. For the most part, they relate to such as we have previously in such cases fully considered, or will probably not again occur on another trial.

For the failure to observe the construction of the rule as we understand it regarding the privilege of constructive placements as a prerequisite to demurrage charges, the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.