The PENNSYLVANIA RAILROAD COM-
PANY, Plaintiff-Appellee,

v.

MOORE–McCORMACK LINES, INC.,
Defendant-Appellant.

No. 80, Docket 30255.

United States Court of Appeals
Second Circuit.

Argued Oct. 17, 1966.

Decided Dec. 28, 1966.

Reginald L. Duff, New York City (Conboy, Hewitt, O'Brien & Boardman, New York City, on the brief), for plaintiff-appellee.

John H. Reilly, Jr., New York City (Browne, Hyde & Dickerson, New York City, on the brief), for defendant-appellant.

Before WATERMAN, HAYS and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

On May 16 and 17, 1962, there arrived at the defendant-consignee's pier in Brooklyn three of plaintiff-carrier's lighters loaded with cargo to be delivered to the defendant-consignee on the pier for export in defendant's ship. It was understood by the parties that the cargo would be unloaded by the cooperative efforts of two independent stevedoring firms, one hired by each party. On May 16th the defendant's sea-going employees began a strike against the defendant's vessels. Because the employees of both stevedoring firms refused to cross the picket lien, the plaintiff was unable to unload and defendant was unable to receive the cargo until the strike ended on June 11th.[1] The plaintiff sued for demurrage. On the basis of the pleadings, answers to interrogatories, requests for admissions, and affidavits, the trial court granted summary judgment for the plaintiff in the amount of $5,425.78, which included interest of $887.28. The defendant has appealed. We affirm.

The relationship between the plaintiff and the defendant is governed by a tariff entitled, "Lighterage and Terminal Regulations in New York Harbor and Vicinity," Freight 116–G, I.C.C. A–1108. Rule A–170, Item 4420 of that tariff provides:

" * * * 48 hours from the time and date the * * * lighter * * * reports, * * * shall be deemed free time, after which demurrage shall accrue against each * * * consignee * * * at the following rates per day of 24 hours or a fraction thereof * * * "

Elsewhere the tariff permits the parties to enter into a supplemental agreement for averaging monthly demurrage charges by carrying over free time credits for unloading in less than 48 hours and using such credits against debits for the tardy release of lighters. The parties in this case had made such an agreement, and, after applying accrued credit, there remained for the three lighters an excess of eighteen lay days. There is no genuine issue as to a material fact and the question on this appeal is whether, under the circumstances, the plaintiff-appellee is entitled to demurrage. If so, the amount of demurrage awarded by the court below is conceded to have been properly computed in accordance with the provisions of the tariff and the supplemental agreement.

The defendant-appellant argues that the freight rate included the cost of carrying the cargo from plaintiff's rail head to the defendant's pier and of unloading the cargo from the lighters onto the pier; that because the plaintiff failed to place the cargo on the pier, it did not properly perform its duties, and it is, therefore, not entitled to charge demurrage. The appellant thus approaches the question as one of breach of contract, without regard to the fact that liability for demurrage charges derives from the terms of the

---

1. Defendant stated to the trial court in its brief that some supervisory personnel were on the pier. However, defendant offered nothing to rebut the deposition of the superintendent of the stevedoring firm hired by the defendant that these people were incapable of performing the receiving operation. Judge Ryan was correct in ruling that there was no genuine issue of fact for trial as to defendant's inability to receive. Fed.R. Civ.P. 56(e). See James v. Honaker Drilling, Inc., 254 F.2d 702, 706 (10 Cir. 1958).

tariff. There was no agreement between the parties which exonerated the defendant-consignee or made any other provision concerning demurrage which would have a bearing on the disposition of this case.

■ The general rule is that demurrage is extended freight and, where there has been an excess of lay days over those stipulated, the consignee is liable to pay demurrage for those excess days regardless of what brought about the delay except (1) where a specific provision of a charter party exonerates the consignee from liability for demurrage; (2) where the delay is the fault of the carrier or those for whom he is responsible; or (3) where the delay is caused by a vis major. Compagnia Di Navigazione Mauritius Rome v. Kulukundis, 182 F.Supp. 258 (E.D.N.Y.1959), affirmed on the opinion below, 277 F.2d 161 (2 Cir. 1960); Yone Suzuki v. Central Argentine Ry., 27 F.2d 795 (2 Cir. 1928); The Marpesia, 292 F. 957 (2 Cir. 1923); The Hans Maersk, 266 F. 806 (2 Cir. 1920); United States v. Atlantic Refining Co., 112 F.Supp. 76 (D.N.J.1951). See also Gilmore & Black, Law of Admiralty § 4.8 (1957).

■■ The facts of the present case make it abundantly plain that the inability of the carrier to place the cargo on the wharf and the inability of the consignee to receive it were caused by the strike of the consignee's sea-going employees and the consequential refusal of the employees of both of the stevedoring firms to cross the picket lines. This was not the fault of the plaintiff-carrier, and the defendant-consignee is not thereby relieved of its obligation to pay demurrage. Nor can the strike and the refusal to cross the picket line be held to constitute a vis major. Compagnia Di Navigazione Mauritius Rome v. Kulukundis, supra, 182 F.Supp. at 263; Sinclair Refining Co. v. Schaff, 275 F. 769 (8 Cir. 1921); United States v. Atlantic Refining Co.,

supra, 112 F.Supp. at 80. Gilmore & Black, Law of Admiralty § 4.8, at 189 (1957).

■ This court has held expressly or by implication, as the decisions of this circuit already mentioned show, that absence of fault in the shipper or consignee is not sufficient to excuse it from liability for demurrage.[2] In Chrysler Corp. v. New York Central R.R., 234 I.C.C. 755 (1939) the Interstate Commerce Commission said:

> "Demurrage may properly be assessed where the detention occurs through no fault of shipper, even though the cause of the detention is beyond the shipper's control."

■ The appellant asserts that the plaintiff-carrier had a duty to mitigate the amount of demurrage being incurred by exercising its option under the tariff to unload the lighter and store the cargo at another terminal at the expense of the owner of the cargo. Under the circumstances of this case, where the delay was caused by a strike which might be settled any day and which neither ran nor gave reasonable ground to believe that it would continue for a long period of time, the failure of the carrier to exercise the option, provided for its benefit, was not a dereliction of duty on its part, which would bar its recovery of demurrage.

■ The defendant-consignee also urges that this court reduce the amount of the demurrage award from that specified in the tariff to the amount of plaintiff-carrier's actual losses due to the delay. Where demurrage charges are unreasonable, a shipper may apply to the I.C.C. for a reparation; and the I.C.C. has ordered reparations in cases similar to the one here. See, e. g., Chrysler Corp. v. New York Central R.R., supra; Balfour, Guthrie & Co. v. Chicago, M., St. P. & P. R.R., 235 I.C.C. 437 (1939). A court, however, has no power to alter the

---

2. A few courts have held to the contrary, e. g., St. Louis, Southwestern R. R. v. Mays, 177 F.Supp. 182 (E.D.Ark.1959); Southern R. R. v. Alcoa, 119 F.Supp. 389

(E.D.Tenn.1951), affirmed 210 F.2d 139 (6 Cir. 1954). See also 13 Am.Jur.2d Carriers § 484.

terms of a duly published and filed tariff in order to make the terms reasonable. Norfolk & W. R.R. v. American Compressed Steel Corp., 181 F.2d 183 (6 Cir. 1950); Great Northern R.R. v. Merchants' Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943 (1922).

The judgment of the District Court is affirmed.

HAYS, Circuit Judge (dissenting):

I dissent.

The carrier is not entitled to recover demurrage because it was unable to perform its duty of unloading. Debate as to which was prior in default, the carrier or the consignee, is largely a futile exercise in logic. But if priority must be determined then surely the goods had to be unloaded by the carrier before they could be received by the consignee. Where neither party can perform then neither party can recover. (See Williston on Contracts, 3d Ed. § 875 (1962).)

I have found no other cases which involved the same situation as that presented by the case at bar. The cases cited by the majority (Compagnia Di Navigazione Mauritius Rome v. Kulukundis, 182 F.Supp. 258 (E.D.N.Y.1959), affirmed on the opinion below, 277 F.2d 161 (2d Cir. 1960); Yone Suzuki v. Central Argentine Ry., 27 F.2d 795 (2d Cir. 1928); The Marpesia, 292 F. 957 (2d Cir. 1923); The Hans Maersk, 266 F. 806 (2d Cir. 1920)) are concerned with particular clauses in charter parties and hold merely that a charterer is not relieved of liability for demurrage because the delay was caused by factors beyond his control. This proposition may or may not be acceptable in circumstances not involving charter parties, but in any event it has no application here since the reason why appellant should not be held liable here is not because it was excused by the strike, but because appellee could not make the cargo available to the appellant.

The situation in the present case more nearly resembles those found in United States v. Atlantic Refining Co., 112 F. Supp. 76 (D.N.J.1951) (mistakenly cited by the majority as supporting its result);

St. Louis, Southwestern Ry. v. Mays, 177 F.Supp. 182 (E.D.Ark.1959); Southern Ry. v. Alcoa, 119 F.Supp. 389 (E.D. Tenn.1951), affirmed 210 F.2d 139 (6th Cir. 1954); Pacific Portland Cement Co. v. Western Pac. R.R., 184 F.2d 34 (9th Cir.), cert. denied, 340 U.S. 906, 71 S.Ct. 282, 95 L.Ed. 655 (1950); and United States Fidelity & Guaranty Co. v. Central of Georgia R.R., 226 Ala. 606, 147 So. 891, 87 A.L.R. 1028 (1933), where performance by the shipper or consignee was excused because for one reason or another the carrier was not in a position to perform.