CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent, vs. MENASHA PAPER COMPANY, Appellant.

*November 19, 1914—February 9, 1915.*

*Carriers: Demurrage charges: Rules construed: When sidetrack is "full:" Placing cars: Holding at destination awaiting orders: Embargo: Illegality: Removal without notice.*

1. Within the meaning of a rule relating to car service and demurrage charges, a private sidetrack was "full" when, although it would hold more, as many cars were upon it as could be handled and unloaded thereon.

2. An embargo by which a railway company, at the request of a manufacturer and not by reason of any conditions on its lines necessitating it, refused to furnish cars for shipments to such manufacturer, was illegal under the statutes which provide against discrimination or special privilege; and, in the absence of any agreement that notice should be given of its removal, no duty rested upon the railway company to notify the manufacturer before raising such embargo.

3. Under rules providing for demurrage charges on cars for unloading after expiration of a certain "free time" following the notice of arrival or placing; that such cars shall be considered placed when they are held awaiting orders from consignees; and that the delivery of cars to a private track shall be considered to have been made when such cars have been placed on the track designated or, if such track be full, when the delivery would have been made had the condition of such track permitted, demurrage charges were proper upon cars which, after notice to the consignee of their arrival, were held beyond the free time, awaiting orders, because of congestion on the private sidetrack of the consignee, although after reaching their destination such cars had been carried to the nearest siding and there held until an accumulation in the yards ceased, it appearing that the consignee's private track was kept full and that there was no delay in switching the cars upon such track when the consignee so requested.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This action was brought to recover for alleged demurrage charges on cars of logs and bolts shipped to appellant at Menasha, Wisconsin, in June and July, 1908. Two causes of action are set out in the complaint; the first for demurrage accruing on intrastate shipments, and the second for demurrage accruing on interstate shipments. The case was referred to John F. Harper, Esq., referee, to hear, try, and determine, who made the following findings of fact and conclusions of law:

## "*Findings of fact.*

"1. That the plaintiff was, at all times mentioned in the complaint, a railroad corporation engaged in operating a railroad at Menasha, Wisconsin, and elsewhere, and that the de-

fendant was at such times, also a corporation engaged in business at Menasha, Wisconsin, and having its place of business adjoining the railroad of the plaintiff.

"2. That the defendant during the times in question maintained and operated, for the purposes of unloading the cars delivered by the plaintiff, a private sidetrack, which connected with the tracks of the plaintiff.

"3. That on and between the 3d day of June, 1908, and the 20th day of July, 1908, the plaintiff carried and delivered in intrastate commerce certain cars, containing pulp and wooden bolts and logs, as more particularly set forth in Exhibit B, attached to the complaint; that the numbers of said cars, the dates and hours of their arrival at Menasha, Wisconsin, the dates and hours when the same were ordered by the defendant placed upon its sidetrack, the dates and hours when they were respectively placed upon its sidetrack for unloading, and the dates and hours when they were respectively released, are all correctly set forth in Exhibit B attached to the complaint.

"4. That on and between the 6th day of June and the 24th day of June, 1912, the plaintiff carried and delivered in interstate commerce certain cars containing logs and wooden bolts, more particularly set forth in Exhibit C, attached to the complaint; that the numbers of said cars, the dates and hours of their arrivals at Menasha, Wisconsin, the dates and hours when the same were ordered by the defendant placed upon its sidetrack, the dates and hours when they were respectively placed upon its sidetrack for unloading, and the dates and hours when they were respectively released, are all correctly set forth in Exhibit C, attached to the complaint.

"5. That the defendant's sidetrack, from which the cars were unloaded by the defendant, could accommodate about seven cars, but had an actual capacity, as used during the times in question, of three or four cars, or possibly five; that as defendant used the sidetrack, more cars could not have been placed upon it and unloaded than were actually placed upon it and unloaded there during the times in question, to wit, about two or three cars a day.

"6. That each and every of the cars in question was held at destination on account of congestion of defendant's private sidetrack, due to its inability to unload and awaiting orders from defendant.

"7. That when each of the cars in question arrived the plaintiff notified the defendant of each arrival by telephone, giving the car numbers, and, according to the general custom, with only occasional exceptions, the plaintiff held the cars until defendant notified it to place them upon the sidetrack for unloading.

"8. That defendant did not order the cars placed for unloading sooner than as shown in Exhibits B and C, attached to the complaint, because, practically, defendant could not handle any more cars than it did, and hence did not ask for them.

"9. That no request or demand was ever made by order to spot cars or otherwise that plaintiff spot cars for unloading on any public delivery track or any place other than defendant's said private sidetrack, and that defendant would have been at all times unable to unload said cars had they been so spotted.

"10. That there was no delay on the part of the plaintiff in switching the cars upon the sidetrack, or refusal or inability of the plaintiff to place the cars, nor any insufficiency of terminal facilities, nor any congestion in the yards of the plaintiff which prevented the placing of cars upon the sidetrack in question when ordered.

"11. That the charges for demurrage in question should be computed according to the rules of the Wisconsin Car Service Association, shown as Exhibit A in plaintiff's complaint.

"12. That the schedules attached to the complaint, Exhibit A, were tariffs for computing demurrage charges, duly prepared, printed, posted and filed with the Railroad Commission of Wisconsin and the Interstate Commerce Commission.

"13. That none of the cars on which demurrage accrued were through consignments not held for orders.    ⁄

"14. That the demurrage sued for accrued at destination.

"15. That there is due to the plaintiff from the defendant for demurrage upon the cars mentioned in Exhibit B attached to the complaint, the amounts therein set forth, aggregating $104, from which there should be allowed deductions, as set forth in said Exhibit B, computed according to the Car Service Rules, amounting to $70, leaving a new balance of $34 to the plaintiff under Exhibit B.

"16. That there is due to the plaintiff from the defendant

for demurrage upon the cars mentioned in Exhibit C attached to the complaint, the amounts therein set forth, aggregating $1,419, from which there should be allowed deductions as set forth in said Exhibit C, computed according to the Car Service Rules, amounting to $435, leaving a new balance of $984 to the plaintiff under Exhibit C.

"17. That on March 14, 1908, the plaintiff, at the request of the defendant, and not by reason of any conditions on its line necessitating such notice, notified the plaintiff's agents in Wisconsin and Michigan, 'until further advised,' to discontinue to furnish equipment to load with bolts for the defendant; that this arrangement, called an 'embargo,' did not run out until the close of the year 1908; that this 'embargo' did not by its terms cover logs and was not thereafter modified by an agreement of the parties to cover logs; that in April and May, 1908, the said limited number of cars from certain shippers were forwarded by the plaintiff to the defendant upon defendant's request, but that such cars were not included among those set forth in Exhibits B and C, attached to the complaint; that after shipment of these cars, the 'embargo' was applied again, so that it was the agreement between the plaintiff and the defendant not to ship any bolts to plaintiff, but this agreement was violated, and the cars mentioned in Exhibits B and C were shipped in violation thereof, and were shipped without notice from the plaintiff to the defendant of intention to ship the same, resulting in the arrival of cars in great numbers on certain days, as more particularly set forth in the exhibits attached to the complaint, and as result of the violation of the embargo agreement as to bolts, hereinbefore found.

"18. That in July 20, 1908, and again in September, 1911, plaintiff duly demanded of defendant payment of the demurrage set forth in the complaint; that defendant refused and assigned as its sole ground for refusing to pay, the existence of the said embargo order.

### "Conclusions of law.

"1. That plaintiff is entitled to recover of the defendant the sum of $34 for the demurrage set forth in Exhibit B attached to its complaint, and the further sum of $984 for the demurrage set forth in Exhibit C, attached to its complaint, making in all a total of $1,018, together with interest thereon from July 20, 1908.

"2. That defendant is estopped from urging any defense other than the existence of the said embargo.

"3. That the embargo arrangement found in finding 17 was and is illegal, contrary to public policy, and void."

The report of the referee was confirmed by the court and judgment entered accordingly for plaintiff, from which this appeal was taken.

For the appellant there was a brief by *Silas H. Bullard* and *Felix J. Streyckmans,* and oral argument by *Mr. Streyckmans.*

For the respondent there was a brief by *Lines, Spooner, Ellis & Quarles,* and oral argument by *Louis Quarles.*

The following opinion was filed December 8, 1914:

KERWIN, J.   The findings of the learned referee, confirmed by the court and sustained by the evidence, support the judgment.   The appellant contends that section C, rule 5, hereafter quoted, is controlling.   Under this rule it is insisted that it was the duty of respondent to keep the track of appellant full and that it would accommodate seven cars, and that only three or four, and never to exceed five, cars were kept thereon, hence no demurrage could have been charged under the rule referred to.   We are of opinion that the referee properly constructed the rule as applied to the facts in this case in holding that the track was full to its capacity when demurrage was charged.   The rule must have a reasonable construction; and it appears from the evidence that while seven cars could be placed upon the track at one time, not to exceed five could be placed there so as to make its use for unloading practicable, and this situation was well understood by the parties and cars placed as required accordingly.   So it is clear that the track was kept full within the meaning of the rule.

In the instant case the cars held and upon which demurrage was charged reached destination at Menasha and were held at Snells siding for convenience awaiting orders, and the appellant ordered only so many cars as it could unload from day

to day. It appears that the appellant did not order any more cars placed on its track than were placed thereon, but it is claimed that it was the duty of respondent to place and keep the track full with seven cars whether such condition interfered with unloading or not, and if the track was not kept full no demurrage could be charged.

The construction placed upon the rule by both parties, viz. that the track was full when the number of cars which could be handled there were upon it, was the sensible and practical construction. The respondent was not obliged to do a vain and useless thing by putting seven cars upon the track at one time and thus prevent the practical handling or unloading of any cars thereon by appellant contrary to its orders. The referee and court below found upon sufficient evidence that while the appellant's sidetrack from which cars were unloaded could accommodate about seven cars, it had an actual capacity as used during the time in question of only three or four cars, or possibly five; that as defendant used the sidetrack more cars could not have been placed upon it and unloaded than were actually placed upon it and unloaded during the time in question, to wit, about two or three cars a day.

Appellant complains of a so-called raising of an alleged embargo without notice. The court below and the referee held the embargo illegal, against public policy, and void. It appears from the evidence that appellant demanded of respondent that it issue an embargo refusing to give to shippers cars for bolts consigned to appellant at Menasha and respondent did so. The order reads as follows: "On account of accumulation, you will, until further advised, discontinue to furnish equipment to load with bolts consigned to *Menasha Paper Company*. Please be governed accordingly." It is clear that the so-called embargo as laid and operated by direction of appellant granted special privileges and was contrary to law, therefore was raised by the respondent so as to avoid liability for discrimination as between shippers. Both the federal law and the state statutes provide against discrimination or

special privileges; and the so-called embargo in question was in contravention of law. *Chicago & A. R. Co. v. Kirby,* 225 U. S. 155, 32 Sup. Ct. 648; *St. Louis, I. M. & S. R. Co. v. Edwards,* 227 U. S. 265, 33 Sup. Ct. 262; *Michie v. N. Y., N. H. & H. R. Co.* 151 Fed. 694; *U. S. v. P. & R. R. Co.* 184 Fed. 543; *Blinn L. Co. v. S. P. R. Co.* 18 Int. Comm. Comm. Rep. 430; *Armour P. Co. v. U. S.* 209 U. S. 56, 28 Sup. Ct. 428; *Chicago, R. I. & P. R. Co. v. Hardwick F. E. Co.* 226 U. S. 426, 33 Sup. Ct. 174; Hepburn Act of June 29, 1906 (34 U. S. Stats. at Large, 584, ch. 3591); secs. 1797— 4, 1797—10, 1797—22, 1797—24, Wis. Stats.

It is claimed by appellant that because some of the cars, after reaching destination at Menasha, were carried beyond to the nearest sidetrack and there held until the accumulation in the yards ceased, then moved back to Menasha, the cars were not held at destination, hence no demurrage could be charged, and rests on *U. S. v. D. & R. G. R. Co.* 18 Int. Comm. Comm. Rep. 7, in support of this position. That case is not controlling here. An examination of it will show that the commission in treating the case found no rule similar to rules of the respondent which control the instant case, copies of which are attached to the complaint, and the case relied upon by appellant is based upon a rule in force at the time the demurrage accrued, therefore governed the case. But afterwards provision was made for a case similar to the one before the commission and which was in force when the case above referred to was tried, but not applicable because the demurrage accrued before such rule went into effect. In referring to this subject in *U. S. v. D. & R. G. R. Co., supra,* the commission said, page 10:

"If the provisions subsequently inserted and now appearing in defendant's tariff had been in force at the time, demurrage would have accrued on cars held at Thistle Junction by direction of complainant. We rest our decision of this case on the proposition that demurrage can be assessed only in accordance with tariff provisions, and that the rules of the Utah Car

Service Association in effect when these cars were delivered did not authorize the demurrage charges in question."

In the case at bar the cars reached destination and notice of their arrival was given by respondent and the cars were thereafter held awaiting orders. The rules in force at the time in question clearly cover the instant case and justify the demurrage charges on any theory of the case.

"Rule 4. Cars which are stopped in transit or held by orders of shippers or consignee for reconsignment to points beyond, for change of load, for amended instructions, for change in billing, milling, shelling, cleaning, etc., or on account of improper, unsafe or excessive loading, or for any other reason for which the shipper or consignee is responsible, shall be subject to car service charges after the expiration of forty-eight (48) hours from arrival at the point of stoppage, and all car service must be collected, or billed as advances when cars go forward."

"Rule 5. . . . -

"Section B. Cars for unloading shall be considered placed when such cars are held awaiting orders from consignors or consignees, or for the payment of freight charges after the notice mailed or otherwise given, or for the surrender of bills of lading.

"Section C. The delivery of cars to private tracks shall be considered to have been made, either when such cars have been placed on the tracks designated, or, if such track or tracks be full, when the road offering the cars would have made delivery had the condition of such tracks permitted. . . ."

Complaint is made by appellant that the so-called embargo was raised without notice to it, and that such raising caused the bunching of cars and the delay in unloading. The alleged embargo was placed at the request of the appellant. There was no agreement that notice should be given of its removal and no duty rested upon the respondent to do so.

*By the Court.*—The judgment is affirmed.


A motion for a rehearing was denied, with $25 costs, on February 9, 1915.