ESTATE OF ENSZ: ENSZ (Marilyn), Executrix and Individually, Respondents, v. BROWN INSURANCE AGENCY, INC., and another, Appellants.

*No. 423. Argued December 2, 1974.—Decided December 20, 1974.*
(Also reported 223 N. W. 2d 903.)

194

For the appellants there was a brief and oral argument by *Gregory Gramling, Jr.,* of Milwaukee.

For the respondents there was a brief by *Cook & Franke, S. C.,* attorneys, and *Robert E. Cook* and *Robert L. Elliott* of counsel, all of Milwaukee, and oral argument by *Robert E. Cook.*

CONNOR T. HANSEN, J. Two causes of action are alleged against Brown and the agency. The first claims that Brown, as an insurance agent for the agency, carelessly and negligently prepared an application for fire insurance and provided information to Employers Commercial Union Insurance Company (hereinafter Employers) which caused them to issue an insurance policy which did not provide coverage for the plaintiff's loss. The second cause of action, also against Brown and the agency, alleges that Brown breached an oral contract with the deceased Ensz by failing to provide an insurance contract which would cover the loss sustained by the plaintiff.

The material facts are not in dispute. The plaintiff and her deceased husband requested Brown to obtain a contract of insurance covering fire loss to their house and its contents. Brown obtained a policy from Employers for a three-year term. The fire occurred on September 6, 1970, within the policy term.

The policy described the business of Ensz as "Operator: Enco Serv. Station." It excluded coverage in the event that the insured increased the hazard of coverage by any means under his control. However, at all times

material to the case, Ensz was actually a self-employed painter and kept large amounts of painting supplies and paint (approximately 600 gallons) in his home. The trial court found, and it is not now disputed, that Brown knew or should have known these facts at the time the policy was written.

At the time Brown secured the policy, the Security Savings & Loan Association (hereinafter Security) had a mortgage on the premises. The standard mortgage clause rider was added to the policy, naming Security as the insured mortgagee. All premiums were paid.

March 29, 1971, the plaintiff made a claim against Employers under the policy. The claim was denied for the reasons that the residence was being used for a business not covered by the policy; that the hazard had been increased by the insured's storage of large quantities of combustible and volatile material on the premises; and that the proof of loss was otherwise deficient.

This litigation followed. Action was commenced June 26, 1971, by service of a summons, an affidavit seeking prepleading discovery and a notice for the taking of an adverse deposition. Brown, the agency, and others were named as defendants. An amended summons and complaint, and a second amended summons and complaint, were served on Brown, the agency, and others, including Employers, as additional parties defendant. The service of these pleadings was accomplished between October 18, 1971, and November 19, 1971.

October 1, 1971, Employers paid Security $25,456.86, representing the balance then due on the mortgage on the Ensz residence. Security assigned its mortgage to Employers without recourse. Subsequent to the assignment, Employers sought to enforce the mortgage and has threatened foreclosure against the plaintiff. The amount of the mortgage payment by Employers is included in the judgment awarded to the plaintiff.

March 6, 1973, the plaintiff and Employers entered into a stipulation by which the action against Employers was dismissed on its merits. No notice of the dismissal was given to the other defendants. At various times during the proceedings, the actions commenced against all the other defendants, except Brown and the agency, were dismissed. However, the only dismissal material to this appeal is that of Employers.

At the commencement of the trial on April 3, 1973, Brown and the agency moved to implead Employers as an indispensable party. The motion was denied.

This appeal presents the following issues:

1. Was the plaintiff's action against Brown and the agency barred by the time limitation for the commencement of an action as provided in the policy?

2. Did the trial court err as a matter of law by including the amount of the outstanding mortgage as an item of damages?

3. Was there sufficient evidence to sustain the finding that the plaintiff's loss included $10,884.95 for personal property?

### *Time limitation.*

The policy provision giving rise to this issue is as follows:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

This provision is taken from the statutory standard fire policy. *See:* Sec. 203.01, Stats.

In *Skrupky v. Hartford Fire Ins. Co.* (1972), 55 Wis. 2d 636, 201 N. W. 2d 49, this court held that an action brought against the insurer and its agent, whether

denominated by the plaintiff as an action for misrepresentation, fraud, breach of warranty, negligence or mistake, still was an action on the policy subject to the one-year limitation.

In *Skrupky, supra,* pages 641 and 642, this court stated:

". . . [W]e are of the opinion that when a loss occurs that is or should have been covered by an insurance contract, an action or suit to collect must be based upon the policy. It is the insurance policy or contract that creates the obligation on the part of the *insurance company* to pay the loss.

"If the policy does not fully or accurately state the agreement of the insurer and the insured, the remedy is to reform the contract to conform to the agreement. If a party chooses to call his cause of action misrepresentation, fraud, breach of warranty, negligence or mistake, the terms of the policy as they are or should have been still control the *obligation of the insurer to pay for a loss.* An action to resolve a dispute as to the *liability of an insurer to pay the loss,* under these circumstances, is an action on the policy." (Emphasis added.)

Unlike the liability of the insurer which may arise only by virtue of the existence of the policy, the liability of the agent has been held to rest on its contract with the insured to procure the insurance coverage agreed upon. *See, e.g., Journal Co. v. General Accident Fire & Life Assur. Corp.* (1925), 188 Wis. 140, 205 N. W. 800; *Stadler v. Trever* (1893), 86 Wis. 42, 56 N. W. 187.

In this case the action is against the agent who failed to provide effective coverage on the property as it was used and as he contracted to do. The limitations of the insurance contract that was issued are of no consequence and the applicable statute of limitations is that for contract. A cause of action against the agent, based upon his alleged negligence and breach of contract with the insured in procuring insurance coverage is thus distinguished from *Skrupky, supra.*

*Mortgage as damages.*

The trial court, in awarding the plaintiff the full value of the destroyed residence up to the limits of the insurance policy, in effect permitted the recovery of the amount of the mortgage held by the Security Savings & Loan Association at the time of the fire. The payment was made by Employers pursuant to the following provision of the insurance policy:

"Wisconsin Savings and Loan Associations
"Standard Mortgage Clause
"(Without Contribution and With Waiver of Mortgagee's Liability for Premium or Assessments)
"Loss or damage, if any, under this policy, shall be payable to Security Savings & Loan Ass'n. 2701 W. National Ave., Milwaukee, Wis. or its assigns, mortgagee, as interest may appear, and this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided that in case the mortgagor or owner shall neglect to pay any premium or assessment due under this policy, the mortgagee may on demand pay the same, but in no event shall such mortgagee be legally liable therefor; the benefit of the provisions of any law to the contrary being expressly waived by the insuror.
" . . .
"Whenever this Company shall pay the mortgagee any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee the whole principal due or to grow due on the mortgage, with interest

accrued thereon to the date of such payment, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee to recover the full amount of its claim."

Brown and the agency advance three contentions as to why this mortgage payment by Employers should not be included as an item of the plaintiff's damages.

a. *Insurance protected plaintiff.*

Brown and the agency assert that plaintiff failed to show that the insurance written did not provide the requisite protection to the extent of the amount paid on the mortgage. It is argued that the trial court's finding of fact that Brown knew or should have known of the occupation of Mr. Ensz and that Mr. Ensz stored paint on the premises is correct but in conflict with the trial court's finding that Employers had a valid defense under the policy as written to the claim of the plaintiff. Thus, it is contended that by virtue of sec. 203.13 (1), Stats., the knowledge of the agent is imputed to the insurance company prohibiting the company from asserting that the misstated occupation of Mr. Ensz in the policy and the increased hazard from the storage of paint constituted a defense to the policy. *See: Trible v. Tower Ins. Co.* (1969), 43 Wis. 2d 172, 168 N. W. 2d 148 (insured can recover on policy where defect in coverage is subject to reformation by virtue of knowledge of agent imputed to the insurance company). If Employers could not avail itself of this defense, it is argued, then the payment made to Security would have discharged the mortgage to the benefit of the plaintiff.

The plaintiff asserts that the result argued for by the defendants would require that in each case where a policy has been issued, it is incumbent upon the plaintiff to sue the insurer for reformation as a prerequisite to recovery from the agent.

In *Skrupky v. Hartford Fire Ins. Co., supra,* this court held that an action to resolve a dispute as to the liability of an insurer to pay the loss, is an action for reformation regardless of the name attached to the cause of action by the insured. However, this court did not hold that an action could not be brought against the agent unless an action for reformation against the insurer was first brought.

On the contrary, in *Trible v. Tower Ins. Co., supra,* this court expressly recognized the right of the plaintiff to sue either the insurance company on the theory of reformation or the insurance agent on the theory that he failed to provide the proper insurance coverage. *See also: Journal Co. v. General Accident Fire & Life Assur. Corp., supra.* The right of the insured to sue the insurance agent without first suing the insurer has been recognized generally. *See:* 16 Appleman, *Insurance Law and Practice* (1968 rev. ed.), p. 534, sec. 8843; *Johnson v. Illinois Mut. Ins. Co.* (1958), 18 Ill. App. 2d 211, 151 N. E. 2d 634. The normal rule is that it is only required that the policy be in evidence and be found by the court not to provide coverage. The trial court so found in the instant case. *See, e.g., Shea v. Jackson* (D. C. Cir. 1968), 245 Atl. 2d 120; *Harris v. A. P. Nichols Investment Co.* (Mo. 1930), 25 S. W. 2d 484. The measure of damages in such a suit against the agent is the value of the property he agreed to insure and which was destroyed. *Stadler v. Trever, supra.*

The plaintiff is under no duty to first seek reformation of the policy. The finding of fact by the trial court that the policy, as written, did not insure the loss of the plaintiff, and the conclusion of law that Brown's actions were the proximate cause of the loss sustained by the plaintiff, are correct.

b. *Employers' right to subrogate.*

The defendants' second claim as to the trial court's error in permitting recovery of the $25,456.89 is based on the contention that in Wisconsin, Employers could not legally take an assignment of the mortgage under the policy's standard mortgage clause and enforce that mortgage against the plaintiff under the facts of this case. If this is true, the defendants argue, then the payment to Security would serve to satisfy the mortgage, which would inure to the plaintiff's benefit prohibiting her from recovering the same amount in this action. *See, e.g., Heifetz v. Johnson* (1973), 61 Wis. 2d 111, 124, 211 N. W. 2d 834.

The defendants direct our attention to *Prentiss-Wabers Stove Co. v. Millers Mut. Fire Ins. Asso.* (1927), 192 Wis. 623, 211 N. W. 776, 213 N. W. 632. Although the mortgage clause in *Prentiss* was similar to that in the instant case, this court's opinion was there directed to a different factual situation. In *Prentiss* the insurer had not made a payment to either the mortgagee or mortgagor and disputed liability as to either. This is not the situation presented here.

The type of clause contained in the present policy of insurance is what is known as a "standard mortgage clause." It is a special clause which protects the interest of the mortgagee under the policy from being invalidated by any act or neglect of the mortgagor. *See:* 43 Am. Jur. 2d, *Insurance*, p. 750, sec. 768. In *Polar Mfg. Co. v. Integrity Mut. Ins. Co.* (1959), 7 Wis. 2d 443, 96 N. W. 2d 822, this court gave the "standard mortgage clause" its usual effect when the court stated at page 449:

"In an annotation in 124 A. L. R. 1034, it is stated that a majority of the courts in this country hold that the standard mortgage clause making the mortgagee a payee and stipulating that the insurance shall not be invalidated by the mortgagor's acts or neglect constitutes

an independent contract between the mortgagee and the insurer. Consideration therefor is found in the requirements of duties to be performed by the mortgagee under the terms of the mortgage clause, such as notifying the company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the mortgagee, and the promise of the mortgagee to pay premiums for increased hazards and to pay premiums upon demand in case of default in payment thereof by the mortgagor.

"In 45 C. J. S., Insurance, p. 230, sec. 507, it is stated that the standard mortgage clause amounts to an independently enforceable contract which shall not be invalidated by any act of the mortgagor or owner either before or after the attachment or issuance of the mortgage clause. 29 Am. Jur., Insurance, p. 448, sec. 553, states the same rule." [1]

The right of subrogation under the standard mortgage clause has been specifically recognized and accepted by this court. In *Polar, supra,* page 450, this court stated:

". . . In the event that the new trial results in a determination of no liability by the defendant [insurer] to Polar [insured], the judgment shall provide for subrogation of the mortgagee's rights to the defendant as provided in the mortgage clause."

Therefore, Wisconsin recognizes the right of the insurer to take an assignment of the policy where it can be shown that the insurer is not liable under the policy to the mortgagor. However, this does not require the plaintiff to show that reformation could not be had. Furthermore, we would observe that in this case the payment to Security and the assignment of the mortgage occurred on October 1, 1971, which was past the time when an action could be brought on the policy by the mortgagor under the one-year time limitation. As such,

[1] *See also:* 6A Appleman, *Insurance Law and Practice* (1972 rev. ed.), p. 477, sec. 4164; 44 Am. Jur. 2d, *Insurance,* p. 762, sec. 1835.

Employers would have had a valid defense to any action on the policy brought by the plaintiff.

The defendants assert that *American Ins. Co. v. Milwaukee* (1971), 51 Wis. 2d 346, 187 N. W. 2d 142, and *Interstate Fire & Casualty Co. v. Milwaukee* (1970), 45 Wis. 2d 331, 173 N. W. 2d 187, establish that subrogation can only be had in Wisconsin to recoup a loss from a tort-feasor who caused it.

The subrogation clause involved in those cases was not the standard mortgage clause, but the general subrogation clause which provides for the subrogation of the insured's rights against third persons to the extent that the insurer pays the loss claim. Further, those cases involved the right of the insurer to sue the city under the mob damage statute and were based not only on equitable principles but on statutory construction and public policy as well. *American Ins. Co. v. Milwaukee, supra,* page 353.

The equities involved in permitting the insurer to sue an innocent third party as in the cited cases, and the equities involved in permitting the insurer to foreclose on a mortgage so that the mortgagor, who has not complied with the terms of his insurance contract, will not receive the benefit of the mortgagee's insurance policy, cannot be compared. Moreover, the *Polar Case* stands for the allowance of subrogation under the terms of the standard mortgage clause.

The assignment of the mortgage to Employers is permissible under the facts of this case. Thus, the plaintiff can derive no benefit from the payment made to Security, and as such, the plaintiff is not prohibited, under the rule of the *Heifetz Case* from recovering her full damages from the defendants.

c. *Failure to permit impleader of Employers.*

The defendants' final contention with regard to the allowance of the amount of the unsatisfied mortgage as

an item of damages relates to the ruling of the court, made in response to a motion by Brown on the day of trial, that it would not permit Brown to implead Employers as a party defendant. It is the defendants' contention that resolution of the issue of whether the assignment of the mortgage was valid or operated to the benefit of the plaintiff was necessary in order to permit recovery of that amount from Brown. Thus they claim that in order to make the decision on that issue binding on Employers, and thereby foreclose double recovery by the plaintiff, it was necessary to have Employers a party to the action.

The defendants take the position that sec. 260.11 (2), Stats., provides statutory authority to join Employers as an additional party.

Sec. 260.11 (2), Stats., provides:

"(2) If an insurer is made a party defendant pursuant to this section and it appears at any time before or during the trial that there is or may be a cross issue between the insurer and the insured or any issue between any other person and the insurer involving the question of the insurer's liability if judgment should be rendered against the insured, the court may, upon motion of any defendant in any such action, cause the person who may be liable upon such cross issue to be made a party defendant to said action and all the issues involved in said controversy determined in the trial of said action or any third party may be impleaded as provided in s. 260.19 (1). . . ."

At the time the motion was made by counsel for Brown to implead Employers, there was no insurance company which was properly a named defendant in the action. St. Paul Fire & Marine Insurance Company, Brown's errors and omissions insurer, was a named defendant; however, on motion by counsel for Brown, disposed of concurrently with the motion to implead

Employers, the trial court ruled that St. Paul was not a properly named defendant in the action.

We are of the opinion that the provisions of sec. 260.11 (2), Stats., are not applicable to the instant situation.

The defendants also rely on sec. 260.19, Stats., as authority to implead Employers.

Sec. 260.19, Stats., provides in part:

"260.19 **Adding new parties by defendants.** (1) When a complete determination of the controversy in court cannot be had without the joinder of other parties, the defendant desiring the joinder of such parties shall serve on each of them a third-party summons, third-party complaint and a copy of all prior pleadings. Such parties shall be indicated as third-party defendants.

"(2) The proceedings in sub. (1) may be taken without leave of the court within 40 days after issue is joined. Thereafter leave of the court, on notice and hearing, or stipulation of the parties, must be obtained.

". . .

"(6) A defendant, who if he be held liable in the action, will thereby obtain a right of action against a person not a party may implead such person as provided in sub. (1)."

Sub. (6) is of no avail to the defendants because, as the facts are presented in this case, Brown could not recover from Employers.

The motion by Brown was not made until the day of the trial; therefore he could not implead Employers under this section as a matter of right. The record discloses that Employers was a defendant in this action for more than two years during which time Brown never raised, by pleading or otherwise, the issue of whether the assignment of the mortgage was valid. The trial court did not abuse its discretion in denying the motion.

Furthermore, we are of the opinion that Employer's presence in the action as a party was not necessary to the complete determination of the action as required by

this section. *See: Johnson v. Illinois Mut. Ins. Co., supra.* A determination of the validity of the assignment of the mortgage was not necessary to give the plaintiff full recovery. This is so because the plaintiff originally could have brought suit against either Brown or Employers. She elected to sue Brown and now she is barred from also recovering from Employers regardless of whether or not the mortgage assignment is valid.

We also find the defendants urging to bring this case under the rule of *Heifetz v. Johnson, supra,* to be unpersuasive. In that case, it was held that an insurer who has paid part of the claim of his insured obtains a *pro tanto* assignment of the claim of the insured against third parties and is an indispensable party in any action by the insured against the third party. The third party then has a defense as to that part of the claim when the insurer is not a party in the action. *Heifetz v. Johnson, supra,* page 124.

In this case Employers has not paid anything to the plaintiff under the policy and the mortgage against her property remains of record and unsatisfied.

*Personal property.*

The defendants claim that there was insufficient evidence to sustain the trial court's finding that the plaintiff suffered a loss of $10,884.95 of personal property.

This court has often held that the findings of fact of a trial court will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Milbauer v. Transport Employes' Mut. Benefit Society* (1973), 56 Wis. 2d 860, 862, 203 N. W. 2d 135; *Peabody Seating Co. v. Jim Cullen, Inc.* (1972), 56 Wis. 2d 119, 127, 128, 201 N. W. 2d 546.

The evidence as to value in this case was supplied by the testimony of the plaintiff and by the introduction

into evidence of a partial list of the items of personal property lost in the fire and their cost. The plaintiff testified as to the cost value of certain additional items which were not included in the list.

An owner of personal property is competent to testify as to her opinion of the value of that property. *Trible v. Tower Ins. Co., supra,* page 187; *Schacht v. Oriental Storage & Transfer Co.* (1913), 155 Wis. 121, 143 N. W. 1058.

In *Schacht, supra,* this court held that evidence of the cost of an item of personal property, especially where that is the only evidence available, is proper and probative of the market value of the object. In that case it was held proper for the owner to testify as to the cost of the item and his opinion as to the depreciation in value due to the length of ownership.

In the present case there was no testimony as to the amount of depreciation for each item due to the length of ownership. However, the plaintiff did testify as to the length of time she owned the items, most of which had been recently purchased. An examination of the plaintiff's testimony reveals that the total cost of the items lost was $11,450.

In view of the fact that most of the items listed were new or of recent vintage, the trial court's finding that they were worth on the aggregate 95 percent of their cost was not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.