CHICAGO & NORTH WESTERN RAILWAY COMPANY, Appellant, v. AFRAM BROTHERS COMPANY, Respondent.

*No. 374. Argued April 7, 1975.—Decided May 6, 1975.*
(Also reported in 228 N. W. 2d 360.)

For the appellant there were briefs by *Borgelt, Powell, Peterson & Frauen,* attorneys, and *Frank A. Scherkenbach* and *James E. Snodgrass* of counsel, all of Milwaukee, and oral argument by *Willard P. Techmeier* of Milwaukee.

For the respondent there was a brief by *Charles W. Oppitz* and *Shinken & Shinken,* attorneys, and *Milton Shinken* of counsel, all of Milwaukee, and oral argument by *Milton Shinken* and *Mr. Oppitz.*

CONNOR T. HANSEN, J. The defendant is a dealer in scrap metal with its yard in Milwaukee, Wisconsin. Much of the scrap metal it receives is shipped by the plaintiff's facilities.

Pursuant to an average agreement between the plaintiff and the defendant and the applicable tariff laws, the plaintiff was authorized to charge the defendant a demurrage tariff if the defendant detained a car in excess of certain time limits. Under the domestic tariff, the demurrage would begin to accrue if the car was not released by the defendant within forty-eight hours of 7 a.m. the day following either actual or constructive placement in the defendant's yard. Constructive placement is a term used to describe the act of notifying the customer that a car is ready for delivery but that for some reason at-

tributable to the customer, the car cannot actually be placed. A constructive placement notice was routinely sent by the plaintiff to the defendant when the cars were received in the plaintiff's yard.[1]

Each day the defendant would issue switching orders to indicate the cars which it wished to release and the cars which it wanted placed in its yard. It was undisputed that the directions on every switching order from the defendant to the plaintiff during the month in question stated "place all loads." It was also undisputed that this meant that the plaintiff was required to place all the cars it had unless the defendant's yard was incapable of handling them. It was also undisputed that the plaintiff did not place all of the cars available for placement each day.

The question before the trial court was whether the plaintiff should have actually placed all available cars consigned to the defendant in the defendant's yard each day pursuant to the defendant's switching orders. The trial court found that the order to "place all loads" was never countermanded by the defendant; that the plaintiff did not comply with the request to "place all loads;" that the plaintiff thereby had failed to accept its responsibility under the switching orders; and that the plaintiff did not discharge its burden of proof to establish the liability of the defendant for the demurrage charges. Two reasons were given by the trial court in reaching its determination that the plaintiff had failed to meet its burden of proof: The plaintiff had failed to show that the working capacity of the defendant's yard made additional actual placements impossible; and the plaintiff had not shown which of the cars actually placed and in the defendant's

[1] An issue was presented to the trial court as to whether the demurrage charges were subject to the tariff regulations relating to certain materials in domestic shipment or a longer period of time established for export materials. The issue was decided adversely to the defendant and is not before us on this appeal.

yard each day were there for the purpose of loading versus unloading.

The issues raised on appeal are whether the trial court correctly applied the law, and whether the findings of the trial court are against the great weight and clear preponderance of the evidence.

The phrase "constructive placement" is a legal fiction. It recognizes the duty of the railroad to actually place all cars if the customer has the ability to receive them. *Union Bag & Paper Corp. v. Director General* (1922), 69 I. C. C. 711, 714. The right to make constructive placement rather than actual placement in this case is governed by the following from H. R. Hinsch, *Freight Tariff* 4–H, I. C. C. H–28, Rule 5, sec. A, which provides:

"Section A.—
"1. When delivery of a car consigned or ordered to an industrial interchange track or to other-than-a-public-delivery track cannot be made on account of the *inability of consignee to receive it,* or *because of any other condition attributable to the consignee,* such car will be held at destination, or, if it cannot reasonably be accommodated there, at an available hold point, notice shall be sent or given the consignee in writing or, in lieu thereof, as otherwise agreed to in writing, that the car is held and that this railroad is unable to make delivery. This will be considered constructive placement. . . ." (Emphasis supplied.)

It has been generally held that the duty of the railroad to actually place, if possible, is a condition precedent to its right to demurrage on constructively placed cars. 13 Am. Jur. 2d, *Carriers,* p. 953, sec. 484; 13 C. J. S., *Carriers,* p. 799, sec. 340. Accordingly, it has been held that if a car is constructively placed when the customer has the ability to receive it, the constructive placement is ineffective. *Union Bag & Paper Corp. v. Director General* (1922), *supra.*

Of primary importance, when demurrage on constructively placed cars is sought, is the question of whether

the customer's inability to receive more cars justified the constructive placement and constituted the proximate cause of the demurrage. *Del E. Webb Construction Co. v. Panhandle & S. F. Ry. Co.* (1954), 292 I. C. C. 279; *Central States Corp. v. Chicago, B. & Q. RR. Co.* (1953), 288 I. C. C. 73. This court has held, in accordance with the great weight of authority, that with regard to the customer's ability to receive more cars, the controlling factor is not the maximum capacity of the customer's track space, but the actual capacity to unload, which might be termed the working capacity. *Chicago & N. W. Ry. Co. v. Menasha Paper Co.* (1915), 159 Wis. 508, 149 N. W. 751, affirmed, 241 U. S. 55, 36 Sup. Ct. 501, 60 L. Ed. 885.

In the *Menasha Case* there was evidence that the Menasha tracks could hold seven cars; that as Menasha used the tracks they could only hold three to five cars; and that under Menasha's unloading procedure only two or three cars could be unloaded each day. The evidence also showed that the railroad actually delivered between two to three cars a day and that Menasha had never requested that more be delivered. In holding that the railroad was justified in constructively placing the remaining cars received, this court stated, at page 514:

". . . The respondent was not obliged to do a vain and useless thing by putting seven cars upon the track at one time and thus prevent the practical handling or unloading of any cars thereon by appellant contrary to its orders. . . ."

Following an essentially similar analysis, the I. C. C. in its decision in *Union Bag & Paper Corp. v. Director General* (1922), *supra*, page 714, divided the issue into two questions: (1) Does the evidence show that the railroad could have placed more cars for unloading, and (2) if placed, does the evidence show that the customer would have unloaded more cars?

The evidence introduced by the plaintiff in this case was intended to prove that the defendant's working capacity, its capacity to unload, was less than the number of cars the plaintiff actually placed in the defendant's yard, and, therefore, the plaintiff was justified in using the constructive placement procedure for the remaining cars. It is undisputed that the defendant had a track capacity for the accommodation of more cars than were actually placed, and that the defendant gave the plaintiff a daily switch order to "place all loads."

The defendant introduced evidence to show that both its working capacity and its track space exceeded the number of cars actually placed in its yard by the plaintiff.

The plaintiff contends that the daily switch order of the defendant to "place all loads" had been countermanded by the defendant. On conflicting evidence, the trial court found that the "place all loads" order had not been countermanded.

In disposing of these issues raised by the plaintiff, the trial court found that the plaintiff had not discharged its burden of proof to establish the liability of the defendant for the demurrage charges which it seeks to recover. We have examined the record and agree with the determination of the trial court. The findings of the trial court are not against the great weight and clear preponderance of the evidence.

On appeal, the plaintiff further contends that the trial court incorrectly required the plaintiff to fill the defendant's yard to its physical capacity even if it exceeded the working capacity of the defendant's yard.

In our opinion, a fair reading of the findings of the trial court does not support the assertion that they required the plaintiff to fill the defendant's yard to its physical capacity even if it exceeded the working capacity of the yard. The trial court held that the plaintiff could have

justified its constructive placement notices if it had been able to submit adequate proof that the order to place all loads had been countermanded by the defendant. In the alternative, the trial court stated that plaintiff could have protected itself by following the order. The trial court did not exclude the further possibility that plaintiff, lacking proof of a countermand, and having failed to follow the order, could nonetheless justify the constructive placements by proof that the working capacity of the defendant's yard precluded additional actual placements. This third possibility was expressly considered by the trial court but dismissed for a failure of proof. In this regard the trial court stated:

". . . It would be pure speculation on the part of the court to ascertain that in view of the size of the yard that the plaintiff was unable to comply with the direction to place all loads, and that in fact the defendant was unable to accept the cars that were constructively placed, all of the cars that were constructively placed. . . ."

The plaintiff also argues that its failure to actually place more cars was not the proximate cause of the demurrage in that it was placing as many cars as the defendant could unload on a daily basis. Essentially, this is an attack on the findings of the trial court that the plaintiff had not met its burden of proving the actual placements by the plaintiff equaled or exceeded the unloading capacity of the defendant's yard.

The evidence is undisputed that the physical track space in the yard of the defendant was sufficient to accommodate more cars than were actually placed there by the plaintiff. Under such circumstances, it is incumbent upon the plaintiff to prove that the working capacity of the defendant's yard had been met or exceeded by plaintiff's actual placements. *National Truck & Storage Co., Inc. v. Pennsylvania RR. Co.* (1948), 270 I. C. C. 539; *Nassau Lumber Co. v. Long Island RR. Co.* (1928),

144 I. C. C. 267; *Union Bag & Paper Corp. v. Director General* (1925), 95 I. C. C. 222. In support of this argument, plaintiff relies on several cases which indicate that if the actual performance figures of the customer's yard show that the customer was unable to unload any faster than it was being supplied cars, the failure to supply more cars was not the proximate cause of the demurrage. *See: Del E. Webb Construction Co. v. Panhandle & S. F. Ry. Co., supra; Central States Corp. v. Chicago, B. & Q. RR. Co., supra; Union Bag & Paper Corp. v. Director General* (1922), *supra; cf. Chicago & N. W. Ry. Co. v. Menasha Paper Co., supra.*

As stated above, the evidence on this issue was in conflict. The trial court held that plaintiff had not met its burden of proof in its attempt to show that the defendant did not have the working capacity to accept all the cars that were constructively placed. As we view the record, it does not support the assertion of the plaintiff that it actually placed all the cars for unloading which defendant was capable of unloading. The findings of the trial court are not against the great weight and clear preponderance of the evidence. *Estate of Ensz* (1974), 66 Wis. 2d 193, 223 N. W. 2d 903; *Stueck v. Le Duc* (1973), 57 Wis. 2d 735, 205 N. W. 2d 139.

The plaintiff also contends that the testimony offered by defendant as to the capacity of his yard to unload is largely speculative in comparison to the performance figures of the yard and should be disregarded. In *Union Bag & Paper Corp. v. Director General* (1922), *supra,* and *Union Bag & Paper Corp. v. Director General* (1921), 61 I. C. C. 424, the I. C. C. held that it would be largely speculative to place much weight on the testimony of the customer concerning the ideal unloading capacity of his tracks and cranes in view of the availability of figures showing the number of cars placed and the number of cars released. In the *Union Bag Cases,* the customer testified that his yard could hold 100-plus cars. The

figures for the month in question, however, showed that there were 68 cars in the yard on an average day, presumably available for unloading; that the railroad delivered an average of 44 cars per day; and that the customer only released an average of 40 cars per day. Significantly, the customer at no time requested that the railroad place any more cars than the amount being delivered. *Union Bag & Paper Corp. v. Director General* (1922), *supra,* pages 715–717. In view of those facts the claim of the customer that it could have unloaded more cars per day if they had been placed, was not persuasive. Similar circumstances existed in every other case cited by the plaintiff in support of its position. *See, e.g.: Chicago & N. W. Ry. Co. v. Menasha Paper Co., supra; Del E. Webb Construction Co. v. Panhandle & S. F. Ry. Co., supra; Central States Corp. v. Chicago, B. & Q. RR. Co., supra; Nassau Lumber Co. v. Long Island RR. Co., supra; Koenig Coal Co. v. Grand Trunk W. Ry. Co.* (1923), 87 I. C. C. 33.

Several factors distinguish the present case from those cited. First, the evidence relied upon by plaintiff does not indicate that the defendant unloaded fewer cars in March, 1967, than the plaintiff actually placed. Nor is there any other evidence in the record which would so indicate. Second, the defendant's testimony with regard to how many cars could be worked in one day is corroborated by the plaintiff's records as to the number of cars on the tracks each morning and the defendant's records as to the number of cars which were pulled from its yard on each daily switch. Third, unlike each of the cases cited by the plaintiff where the customer either specified that a reduced number of cars should be placed or failed to demand that the railroad place more cars, the defendant in this case executed daily orders to "place all loads," and repeatedly requested of the plaintiff's yardmaster that more cars be delivered.

It has consistently been the defendant's position that it unloaded more cars than the plaintiff delivered and that it could have unloaded all of the cars constructively placed if they too had been delivered, as demanded. In *Union Bag & Paper Corp. v. Director General* (1925), 95 I. C. C. 222, 233, the I. C. C. made the following comment:

"But assuming that complainant actually had ability to unload more cars, should it not in fairness have informed defendant of that fact? Complainant knew from the bills of lading in its possession that large numbers of cars were en route; it knew from the notices of constructive placement that large numbers of such cars had arrived; . . . and it knew from the daily demurrage sheets that large amounts of demurrage charges were accruing on cars constructively placed. If under such circumstances complainant was able to receive and unload more cars, an affirmative duty to speak rested upon it. Yet it was silent or else gave the impression through its representatives by acts and statements that complainant was doing the best it could in the matter of unloading. Having acquiesced in defendant's manner of making deliveries and having induced a course of action on the part of defendants, complainant should not now claim that its unloading capacity was any greater than its actual performance during the month of August, 1918. . . ."

This statement also capsulizes what this court held in the *Menasha Case*. In the present case, however, the defendant did precisely what Union Bag and Menasha failed to do. By failing to follow the orders of the defendant, the plaintiff in this case risked the possibility of not being able to prove that its constructive placements were justified because they actually placed more cars than the defendant could unload. The trial court held that the plaintiff failed to prove that justification or any other justification for not actually placing all the cars. Those findings were not against the great weight and clear preponderance of the evidence. The plaintiff risked nothing if it complied with the defendant's orders to place all loads because if the defendant were in fact incapable

of unloading all the cars, the same demurrage would have accrued.

We are of the opinion that the trial court correctly applied the appropriate law and that none of its findings were against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.