**PORT TERMINAL RAILROAD ASSOCIATION, Appellant,**

v.

**CONNELL RICE & SUGAR CO., Inc., Appellee.**

**CONNELL RICE & SUGAR CO., Inc., Appellee,**

v.

**PORT TERMINAL RAILROAD ASSOCIATION, Appellant,**

**No. 24879.**

United States Court of Appeals
Fifth Circuit.

Dec. 19, 1967.

George H. Hagle, Houston, Tex., for appellant.

Cornelius O. Ryan, Houston, Tex., for appellee.

Before TUTTLE and GEWIN, Circuit Judges, and HUNTER, District Judge.

PER CURIAM:

In this suit to collect demurrage charges the United States District Court for the Southern District of Texas entered the following memorandum opinion and order:

"This is a suit to collect demurrage charges assessed by the plaintiff railroad with respect to 64 railroad cars of rice consigned to the defendant which were detained in the plaintiff's yards due to labor dispute.

"The charges are in accord with the applicable tariff which has been duly published. The case has been submitted on stipulated facts.

"On December 13 and 14, 1964, the plaintiff received at its yards 21 of defendant's cars. These cars were to be switched from plaintiff's yards to the Port of Houston and the contents loaded on ships for export. On December 16, 1964, before the cars could be switched, plaintiff's employees went on strike. On February 1, 1965, plaintiff's employees returned to work. However, the plaintiff still could not switch defendant's cars for during the delay caused by the strike of plaintiff's employees, the stevedores and longshoremen at the Port of Houston had struck and remained on strike at the time plaintiff's employees returned to work.

"The plaintiff did not charge demurrage against the defendant during the time plaintiff's employees were on strike. On February 1, 1965, demurrage charges began to run against the 21 cars that arrived in December. During February and March 1965, the remaining 43 cars in issue arrived at plaintiff's yards. The longshoremen's strike ended on March 1, 1965, but due to the backlog of cargo awaiting loading, the last of the cars in question was not unloaded until the end of March.

"The bulk of the demurrage charges stems from the detention from February 1, 1965 to March 13, 1965, of the 21 cars that arrived in December and were not unloaded promptly due to the strike of plaintiff's employees. The remaining cars in issue all arrived after plaintiff's employees returned to work.

"Defendant contends that since none of the delay was attributable to any action on its part, it is not liable for any of the demurrage.

"Demurrage charges are in the nature of a penalty that is assessed against railroads and shippers alike in order to promote prompt loading and unloading of cars. Frequently, demurrage is assessed and liability attaches although the delay is not caused by the assessed party. See, e. g., Pennsylvania R. R. Co. v. Moore-McCormack Lines, Inc., 370 F.2d 430 (2nd Cir. 1966).

"As to those cars that arrived in plaintiff's yards after February 1, 1965, I am of the opinion that demurrage was properly assessed and that the plaintiff is entitled to judgment for the amount of demurrage that those cars accrued.

"In making the above finding, I reject the defendant's contention that it was entitled to a reduced demurrage rate under the provisions of Section G of Rule 8 of Hinsch Tariff.[1] Section G requires the party against whom the demurrage is assessed to notify the railroad in writing that it intends to claim the reduced rate. The defendant made no such claim within the prescribed time limits. The notice requirement was a condition precedent to obtaining the reduced rate. St. Louis Southwestern R. Co. v. Mays, 177 F.Supp. 182 (E.D. Ark.1959).

"Turning now to the 21 cars that arrived in plaintiff's yards in December, I am of the opinion that the defendant is not liable for demurrage on these cars. While the consignee normally is liable for demurrage regardless of what brought about the delay, there are some exceptions. One of the exceptions is applicable here; namely, where the delay is the fault of the carrier or those for whom the carrier is responsible. See, Pennsylvania R. R. Co. v. Moore-McCormack Lines, Inc., supra.

"The parties have not cited nor has the Court found any cases involving facts similar to those involved here. All of the 'strike delay' cases are concerned with only one strike by employees of the consignee or a third party. See, e. g., Reading Co. v. Dexter-Carpenter Coal Co., 96 F.Supp. 650 (S.D.N.Y.1951); Chicago, B. & O. R. Co. v. Blunk, 101 F.Supp. 219 (S.D.Iowa 1951). These cases are easily distinguishable from the instant case in that the primary cause of the delay here was the action taken by plaintiff's employees. Had plaintiff's employees not struck, it is obvious that the cars could have been unloaded long before the longshoremen began their strike. The defendant should not be penalized for the delay caused by the longshoremen's strike when there would have been no delay at all had it not been for the strike of plaintiff's employees.

"Judgment will be entered in favor of the defendant with respect to the demurrage sought to be assessed against the 21 cars that arrived in December 1964."

We agree with the District Court. The judgment is affirmed.

---

1. "1. When it is impossible to load or unload (including partial loading or unloading) or receive cars from or make cars available to this railroad because of strike interference at the point where the loading or unloading is to be accomplished, detention until the first 7:00 A.M. after such interference ceases as to each car will be excluded in computing * * * charges.

* * * Such detention on loaded or empty cars * * * will be charged for at the rate of $3.13 per car per day or fraction of a day, including Saturdays, Sundays and holidays * * * and without free time allowance; provided claim in writing is presented to this railroad within 30 days, exclusive of Saturdays, Sundays and holidays, * * * after the date on which strike ceases, stating the date and time interference began and ceased.

"2. The detention of cars which otherwise would be subject to an average agreement * * * will during the period of interference set forth in Paragraph 1, be subject to the charge stated therein, and such cars will not, during that period, earn credits nor accrue debits, nor will it be permissible to offset the charge or any part thereof, accruing under Paragraph 1 by credits earned on the same or other cars." I.C.C. H–17, Supplement 4 to Freight Tariff 4–G, Hinsch, Rule 8, Section G.