**HOUSTON BELT & TERMINAL RAILROAD COMPANY, Plaintiff-Appellee,**

v.

**CONNELL RICE & SUGAR CO., Inc., Defendant-Appellant.**

**No. 27094.**

United States Court of Appeals Fifth Circuit.

June 9, 1969.

Rehearing Denied Aug. 27, 1969.

Cornelius O. Ryan, Houston, Tex., Kelley, Ryan & Merrill, Houston, Tex., of counsel, for appellant.

Alton F. Curry, Houston, Tex., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel, for appellee.

Before TUTTLE and GEWIN, Circuit Judges, and COMISKEY, District Judge.

TUTTLE, Circuit Judge:

Connell, a consignee of 78 railroad cars of rice, appeals from a judgment holding it liable for demurrage charges because of the delay in unloading the cars.

The problem here arose when Houston, a belt line, received the cars from other carriers and undertook to deliver them to the destination designated by Connell, but which delivery was frustrated. This destination was the dock side warehouse of Gulf Atlantic Warehouse Company. Steveuores were on strike at the time, and, although Gulf employees were not on strike, they honored the longshoremen's picket lines and refused to unload the cars.

Under the prevailing relationship between carrier, Houston, and the consignee, Connell, the task of unloading devolved upon the consignee. However, apparently, as a convenience to the consignee, Houston engaged Gulf to perform the unloading task, for which it would then bill Connell. Payment for this task was no part of the carrier's tariff.[1]

We have previously dealt with other phases of a similar demurrage claim in Port Terminal Railroad Association v. Connell Rice & Sugar Co. (5 Cir., 1967), 387 F.2d 355. However, we did not deal with the matters now urged upon us. In that case, the court allowed the carrier to collect demurrage from Connell when delivery was made impossible because of a longshoremen's strike, which in fact caused a de facto embargo on delivery to *destination*. This resulted from a backup of unloaded cars.

The solution of the problem rests upon a construction of a provision of the applicable tariff:

"When delivery of a car * * * cannot be made on account of the inability of the consignee to receive it, or because of any other condition attributable to the consignee, such car will be held at destination, or, if it cannot reasonably be accommodated there, at an available hold point, notice shall be given or sent to the consignee in writing, or, in lieu thereof, as otherwise agreed to in writing, that the car is held or that this railroad is unable to make delivery. This will be constructive placement."

When there is constructive placement, the consignee is then permitted to minimize demurrage by electing to do so by notice to that effect. Here, Connell did not so elect, contending that there *was no constructive placement* because its "inability" to "receive" the cars was not "because of a condition attributable to" it.

■■ Connell contends that the only circumstance that permits the constructive placement is one which involves fault attributable to the consignee. Here, for the purpose of this discussion, we assume the failure of Gulf was not "attributable" to Connell (see footnote 1). However, we think that Connell has misread the tariff. It says explicitly that "when delivery of a car * * * cannot be made on account of the inability of consignee to receive it [admittedly the situation here]" there may be constructive placement. To be sure, it also says "or because of any other condition attributable to the consignee." We do not think the fault of consignee's language can be held to modify the clear language first quoted above.

---

1. Because of the disposition we make of the case, we do not need to determine whether under this arrangement, the failure by Gulf's employees to perform their unloading because of the strike of third parties, was tantamount to a similar failure if that had occurred by Connell's own employees. Connell concedes that if the failure to unload was chargeable to it, then it should not prevail here.

This constructive placement tariff provision was not before the court in the Port Terminal Railroad Association case, supra, but it is expressly relied upon here. As stated in that case:

"Demurrage charges are in the nature of a penalty that is assessed against railroads and shippers alike in order to promote prompt loading and unloading of cars. Frequently, demurrage is assessed and liability attaches although the delay is not caused by the assessed party. See, e. g., Pennsylvania R.R. Co. v. Moore-McCormack Lines, Inc., 370 F.2d 430 (2nd Cir.1966)." Port Terminal Railroad Ass'n v. Connell Rice & Sugar Co., 387 F.2d 355, 357.

Here, since Connell did not act upon the privilege accorded it upon receiving notice of constructive placement and give notice to minimize demurrage, it must be held liable for regular demurrage as such.

The judgment is affirmed.