**GOLD STAR MEAT COMPANY,**
**Plaintiff,**

v.

**UNION PACIFIC RAILROAD COM-**
**PANY, Defendant.**

**No. 186–70.**

United States Court of Appeals,
Tenth Circuit.

Feb. 8, 1971.

Rehearing Denied April 13, 1971.

Clayton D. Knowles, Denver, Colo. (J. H. Anderson and H. F. Coray, Omaha, Neb., on the brief) for appellant.

Robert Leland Johnson, Denver, Colo., for appellee.

Before HILL, SETH and HOLLOWAY, Circuit Judges.

HILL, Circuit Judge.

Appellant, Union Pacific Railroad appeals from a $3,169.35 judgment rendered against it by the trial court sitting without a jury. In sum, the trial court held that appellant negligently carried out its duties as a common carrier and in doing so caused appellee Gold Star to suffer the loss of its contract to supply a certain shipment of meat to a buyer in Memphis, Tennessee. Jurisdiction of this action is founded upon 28 U.S.C. § 1337.

The facts are largely without dispute. Appellee Gold Star, located in Denver, Colorado, is a supplier of prime cuts of meat. In early March, 1968, appellee contracted with John Morrell & Company of Memphis, Tennessee, to supply the latter with a quantity of beef on Monday, March 11, 1968. Having previously contracted out and shipped meat to John Morrell & Company under similar circumstances, appellee's sales manager believed that if the meat was shipped by appellant's train on Friday, March 8, 1968, it would arrive Monday morning, March 11, 1968. The sales manager testified that it is his custom to verify shipping schedules before contracting to supply meat to distant buyers, and he further testified that the receiving clerk at the railroad's loading ramp assured him that if the shipment of meat was received by 6:00 p. m. Friday, it would be loaded onto a fast train that day and would arrive in Memphis the following Monday morning. It developed, however, that in order to make the fast train on Friday the shipment had to arrive at appellant's loading ramp by 4:00 p. m.

Without dispute, appellee did not deliver the meat shipment to appellant's ramp until 4:45 p. m. Friday, March 8. When Gold Star delivered the meat to appellant's ramp, it was accompanied by the usual bill of lading made up by appellee. On the bill of lading was the notation, "Arrive Monday 3/11 Ship Friday 3/8." Appellant's employee in charge of the loading ramp observed this notation and knew that the shipment had arrived too late to get on Friday's eastbound fast train. Resultingly, he also knew that the shipment would not arrive the following Monday morning as appellee intended. Despite this knowledge, no effort was made to advise appellee that it was impossible to meet the desired schedule noted on the bill of lading.

Subsequently, the meat was shipped out on the next available train, which did not leave Denver until the following day, March 9, at 12:30 p. m. The shipment arrived in Memphis on Tuesday, March 12 and it was refused by John Morrell & Company. Appellee then attempted to find a new market for the beef, and eventually it was sold in Chicago at a loss. By this action, appellee seeks damages for the loss plus the cost of freighting the meat to the eventual purchaser.

The case was tried on theories of negligence and appellant's failure to deliver the meat within a reasonable time. The trial judge made findings and conclusions and entered judgment for Gold Star on the basis that appellant Union Pacific failed in its duties as a common carrier. Specifically, the trial court determined that the railroad knew of Gold Star's desired shipping schedule, knew when it received the shipment that the schedule could not be met, and thereby had a duty to advise Gold Star that the shipping schedule could not be met, but failed to so advise Gold Star. Appellant Union Pacific takes this appeal contending that there is no such obligation on

the part of the railroad as found by the trial court.

As a starting point, we note that jurisdiction arises from 28 U.S.C. § 1337 which, in short, grants the district court jurisdiction of civil actions arising under an Act of Congress regulating commerce. The pertinent Act of Congress regulating commerce is 49 U.S.C. § 20(11) which is known as the Carmack Amendment. In substance this statute sets out the liability and responsibilities of railroads operating in interstate commerce: "Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it * * *." Clearly the liability imposed on interstate common carriers is exceedingly broad, and the question before this court is whether within this broad area of a common carrier's liability there lies appellant's liability for the loss suffered by appellee.[1] It is plainly seen that though the Carmack Amendment stakes out the liability of a common carrier, it does not explicate the duties of a common carrier which, if breached, result in liability for proximately caused losses. In this respect, the Supreme Court has held in a long history of cases that the liability imposed by this statute "[p]lainly implies a liability for some default in its common-law duty as a common carrier."[2] More fully stated, the Supreme Court has established, "The statutory liability * * * is not beyond the liability imposed by the common law, as that body of law applicable to carriers has been interpreted by this court, as well as many courts of the states."[3] In summary, it can be fairly said, "Thus, whatever substantive or primary rights may flow from the statute, they are not new, but are determined by reference to common law doctrines."[4] Our attention thus turns to what common law duties are visited upon common carriers.

At common law, carriers are obligated to transport goods with reasonable diligence and to make delivery of goods within a reasonable time.[5] Commensurate with that obligation is the right of action by a shipper for delay,[6] although delays due to occurrences which could not have been reasonably anticipated are excusable. Following from this, there is said to be a collateral common law duty: "Where goods are tendered to a carrier for transportation, it is bound to advise the shipper as to any cause likely to delay transportation, which cause is within its knowledge, or within its fair and reasonable means of knowledge, and not within the knowledge of the shipper * * *."[7]

We cannot but agree that such a duty exists for in Atchison, T. & S. F. Ry. Co. v. Jarboe Livestock Comm. Co., 159 F.2d 527 (10th Cir. 1947), this Circuit recognized the applicability of just such a common law duty. The facts in Jarboe admittedly are not on all fours with the facts in the present case, but the two cases coincide in two crucial respects. In both there was a delay in shipment not caused by the carrier's

1. In passing, we note that by the Carmack Amendment, Congress intended to take exclusive possession of the subject and thereby superseded all state policies and regulations concerning the liability of interstate common carriers. Hence, a common carrier's liability is governed solely by federal law, and that is all we need look to. Adams Exp. Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913).

2. Adams Exp. Co. v. Croninger, 226 U.S. 491 at 507, 33 S.Ct. 148 at 152 (1913).

3. Id. at 511, 33 S.Ct. at 154.

4. J & H Flyer Inc. v. Pennsylvania Railroad Company, 316 F.2d 203 at 205 (2nd Cir. 1963).

5. Chicago & A. R. Co. v. Kirby, 225 U.S. 155, 32 S.Ct. 648, 56 L.Ed. 1033 (1912).

6. New York P. & N. R. Co. v. Peninsula Produce Exch., 240 U.S. 34, 36 S.Ct. 230, 60 L.Ed. 511 (1916).

7. 13 C.J.S. Carriers § 199, p. 403 (1939); see 13 Am.Jur.2d Carriers § 371 (1964).

negligence, and in both the carrier had knowledge of the delay but failed to so inform the shipper who was placing goods on the train. Against this background, the court in Jarboe approved the trial court's judgment against the carrier resting on the proposition "[t]hat no matter how meritorious the excuses offered for delay in transportation, the duty nevertheless rested upon the carrier to inform the shipper of the known delay, and that the breach of that common law duty was not lessened by the plea of a 'busy railroad.' " [8]

■ We approve the trial court's legal conclusion that on the facts heretofore set out appellant Union Pacific defaulted on its duty to advise Gold Star of the impending delay, and consequently Union Pacific is liable for the resulting loss.

Lastly, appellant Union Pacific argues that the trial court held it liable for special damages despite the fact that the railroad had no knowledge that such special damage might be incurred. This contention is without merit. The measure of damages in delay cases is actual damages, and the market value rule has been adopted as a proper method to ascertain the actual damages.[9] The burden of proof is on the carrier to show that the market value rule will not result in a just measure of actual damages, and the common carrier has failed to carry this burden.

■ The record is replete with evidence showing the difference in the market value of the goods on the date and in the condition they were contracted to arrive at their destination and the market value after the delayed arrival. The trial judge properly utilized this measure of damages in rendering judgment.

Affirmed.

---

8. Atchison, T. & S. F. Ry. Co. v. Jarboe Livestock Comm. Co., 159 F.2d 527 at 529 (10th Cir. 1947); *see* Mich. Cent. R. Co. v. Min. Springs Mfg. Co., 16 Wall. 318, 21 L.Ed. 297 (1873). *See also* Little Rock Packing Co. v. Chicago, B. & Q. R. Co., 116 F.Supp. 213 (W.D.Mo.1953).

9. Great Atlantic & Pacific Tea Co. v. Atchison, T. & S. F. Ry. Co., 333 F.2d 705 (7th Cir. 1964); *see* Am.Jur.2d Carriers § 377 (1964).