**PAGE COMMUNICATIONS ENGI-
NEERS, INC., Plaintiff,**

v.

**HELLENIC LINES, LTD., Defendant.**

**Civ. A. No. 1588–72.**

United States District Court,
District of Columbia.

March 16, 1973.

Charles A. McNelis, Welch & Morgan, Washington, D. C., for plaintiff.

Stanley O. Sher, Paul M. Tschirhart, Bebchick, Sher & Kushnick, Washington, D. C., for defendant.

## MEMORANDUM OPINION JUDGMENT AND ORDER

GESELL, District Judge.

This is a diversity and admiralty suit claiming damages for breach of contract and negligence. Page, a shipper, sues defendant steamship company for failure to carry cargo from New York to Greece and failure to notify that the shipment was left on the dock. Tried to the Court without a jury, the underlying facts necessary to determine liability are not substantially in dispute.

Page had a $15,000,000 contract with the United States Information Agency to build a station for the Voice of America in Greece. This included 32 high-frequency antennae, from 196 feet to 410 feet high, for transmittal and receipt of voice communications. The contract allowed 1095 days for completion, commencing November, 1968, with a $900-per-day penalty for delay. Substantial amounts of equipment and supplies had to be sent periodically to Greece from the United States. For this purpose, Page used an international freight forwarder in New York, Rohner, Gehrig & Co., Inc., which, in turn, arranged shipments for Page with Hellenic. This course of dealing was established prior to the events on which this suit focuses.

Hellenic's fleet included the M/S TURKIA, operating from Pier 57, Brooklyn, New York. In September, 1971, Page arranged through its forwarder to ship a container to Salonica, Greece, for use in the Voice of America project. The container, some 20 feet in length, weighed about 20 tons and held, among other things, various special tools and rigging equipment, some of which were urgently needed at the project site where antennae were being erected.

In September it was generally known to Page and other shippers that a longshoremen's strike was in the offing. The Union's contract expired September 30, at midnight, and a strike was a distinct possibility.[1]

On September 16, the Page container arrived at Hellenic's dock and was thereafter in defendant's custody. At noon on September 30, Hellenic advised Page, in response to an inquiry through the forwarder, that the container was on board the M/S TURKIA, and sent the forwarder a bill of lading which was immediately paid. While there is some doubt as to which representative of Hellenic gave this advice by telephone, there is none that the advice was given. On October 1, M/S TURKIA sailed after the strike had commenced, with Page's container still on the dock.[2]

Containers are customarily loaded at the last stage of loading. They are placed in hatch openings for convenience because of their bulk. At this time there were three or four containers destined for loading. None were loaded, and Hellenic's dock manager knew this to be so. The M/S TURKIA departed with-

---

1. While the M/S TURKIA was initially estimated to sail September 17, and failed to depart until days later, the claim before the Court is in no way based on delays in the M/S TURKIA's departure date.

2. Other cargo destined for Greece and handled by the forwarder for Page at about the same time went on the M/S TURKIA, including bulk cargo scheduled for the M/S LOVERNO, another Hellenic vessel that was due to go out September 27, but which was loaded on the M/S TURKIA when the M/S LOVERNO cancelled. This bulk shipment arrived at the New York dock later than the container.

out being fully loaded. About 163 tons were put on board and about 600 to 700 tons were left behind. While Hellenic used every effort to load fully, time was short. Hellenic was unable to complete loading by reason of the impending strike, which caused a shortage of long-shoremen and a work slowdown on the eve of the strike.

The first intimation Page had that the vital container was not aboard the M/S TURKIA came around November 5, when the container was not unloaded with other Page cargo at Salonica, Greece. With considerable difficulty and expense Page eventually retrieved the container, took it to its plant at Vi-enna, Virginia, repacked items and shipped the equipment by air and surface to Greece, where it arrived after passage of considerable time.

Before turning to a consideration of the various efforts to prove damages, it must be determined whether liability has been established either for Hellenic's failure to ship or for its failure to inform Page promptly of non-shipment.

■ Hellenic is excused from its failure to carry the container as required by its contract by the provisions of 46 U.S.C. § 1304(2)(j), but it is not absolved of its responsibility to the shipper arising from its misrepresentation as to the status of the cargo combined with its negligence in failing to advise the plaintiff that, contrary to prior repre-sentations, the container was left on the dock. Hellenic's inaccurate assurances and failure to correct by immediate sub-sequent advice, misled plaintiff to its detriment.

■ Since no containers were loaded, a fact known at the time to defendant's personnel, it was on notice of non-ship-ment. The M/S TURKIA actually sailed after the strike began. Given the paid bill of lading and all the other circum-stances, there was no warning or con-structive notice to Page that its contain-er was not loaded and headed for Greece, as there might have been had the ship not sailed at all.

■■ In the light of all of these con-siderations involving acts or omissions of Hellenic with respect to the container, Hellenic had a continuing duty to advise the shipper that the container had been left behind, even though it had not been advised that the cargo was vital to con-tinued progress of the work in Greece. The strike did not prevent Hellenic from giving Page prompt and proper notice. This duty existed at least as long as the container sat on the dock awaiting load-ing and transportation. This continuing duty to notify did not arise out of Hel-lenic's statutory obligations, the bill of lading or any agreement with Page, nor is it connected with the actual transpor-tation of goods at sea, so that the lia-bility limitations of 46 U.S.C. §§ 1304(2) (j) and 1304(5) are inapplicable. See 46 U.S.C. §§ 190 and 1311. Rather, it constitutes Hellenic's common law com-mon carrier duty of reasonable care un-der circumstances such as presented here. Gold Star Meat Co. v. Union Pa-cific R. R. Co., 438 F.2d 1270 (10th Cir. 1971); 13 C.J.S. Carriers § 199, at 403 (1939); see 13 Am.Jur.2d Carriers § 371 (1964). The negligent breach of this duty makes defendant liable in tort for damages proximately caused by failure to notify. As for measuring the quantum of damages, plaintiff, of course, assumes a distinct burden.

■ The proof established that upon learning of the non-shipment when the M/S TURKIA arrived in Greece, Page retrieved the container from the dock with the aid of the United States (the strike still being in effect) and after transport to its plant at Vienna, Vir-ginia, the contents were repackaged and sent by air and surface to the construc-tion site. Substantial expense was in-volved, but this expense would have been incurred in any event and was not proxi-mately caused by a failure to notify.

Certain items in the container could not be replaced by purchase in Greece, progress on construction and erection of the antennae were delayed due to lack of essential tools and as a result some rent-ed equipment was idle and the work force

lost efficiency. Page made a strenuous but confusing, inadequate effort to compute the actual dollar amount of these elements of damage, which the record shows it took reasonable steps to mitigate.

Without support of trained accounting personnel, Page developed various schedules designed to show additional expenses at the site incurred by reason of Hellenic's failure. These schedules were seriously undermined on cross-examination and as adjustments were made to accommodate obvious errors, further errors and continuing deficiencies were disclosed. The schedules were based in part on hearsay data, some crucial, that was never supported by competent proof. The Court recognizes that some of this lack of precision was caused by difficulties in bringing personnel and records from Greece, but beyond this the presentation reached too far and was too speculative to support many aspects of the claims advanced.

■ On the other hand, some damages were shown through the credible testimony of Mullarky, an experienced official in charge of the actual tower construction. He established that if the shipment had arrived on the M/S TURKIA, the towers would have been completed in July, 1972. He estimated from his immediate on-site knowledge that completion was delayed about 21 working days and that the efficiency of the working force on the towers was decreased 30 percent between the time the equipment should have arrived at site and the actual arrival beginning December 20, a period of about 31 working days. The direct labor expense being incurred was approximated at $2500 per day, so that the 30 percent inefficiency for 31 working days caused Page $23,250 in damages. Although there is some uncertainty and vagueness about the proof underlying this figure, the proof of actual damages is concrete. The figures used in these computations were not successfully challenged and Page must not be completely disadvantaged by difficulties in establishing its losses for which it is not responsible. Although its proof on other aspects was inadequate, for reasons noted below, some additional unmeasurable damage was incurred which off-sets any slight inflation which may be present in the estimates relied on above.

■ Plaintiff claims loss in efficiency of supervisory officials but this cannot be mathematically measured on the basis of the proof. Some loss due to non-use of rental cranes and compressors was shown but the conflicting evidence does not support an award of additional damage. A claim has also been made for liquidated damages of $900-per-day of delay that Page asserts it will owe the Government under its construction contract. This claim cannot be allowed. No such award has been adjudicated against Page. Given the escape clauses in the construction contract for strike-caused delays, it is pure speculation to assume Page will ever be subject to such a determination because of Hellenic's failure to notify, particularly since Page was delayed by other factors not here relevant. All other elements of damage claims are also too speculative or not established by a preponderance of the proof.

The foregoing shall constitute the Court's findings of fact and conclusions of law. Enter judgment for the plaintiff for $23,250, with interest from date of judgment, plus costs.

So ordered.