CITY OF NEW ORLEANS By and Through the PUBLIC BELT RAIL-ROAD COMMISSION of the City of New Orleans, Plaintiff,

v.

SOUTHERN SCRAP MATERIAL CO., LTD., Defendant.

Civ. A. No. 79–2825.

United States District Court, E. D. Louisiana.

June 6, 1980.

Raymond J. Salassi, Jr., New Orleans, La., for plaintiff.

A. J. Schmitt, Jr., C. T. Williams, Jr., New Orleans, La., for defendant.

CASSIBRY, District Judge:

Plaintiff, The Public Belt Railroad (the "Railroad"), is an agency of the City of New Orleans that operates a terminal railroad in the New Orleans area. The Railroad provides the scrapyard owned by the defendant, Southern Scrap Material Co., Ltd. ("Southern Scrap"), with rail service across the Florida Avenue Bridge which spans the Inner Harbor Navigational Canal (Industrial Canal). On February 14, 1979, a ship, the M/V Miriam, struck the bridge. The accident caused structural damage to the bridge and prevented any rail crossing until March 23, 1979.

Southern Scrap is in the business of importing and exporting various scrap metals. The Florida Avenue Bridge provides the sole access to its commercial yard. As a result of the accident, the Railroad was prevented from delivering numerous carloads of materials to Southern Scrap. The cars consigned to defendant were held by plaintiff until they could be unloaded by alternative means. Plaintiff brought this suit to recover demurrage charges for the extra days the cars were held.[1] Defendant

---

1. A few cars were already unloaded but were trapped in Southern Scrap's yard until the bridge reopened. Plaintiff paid per diem to the owners of these cars but does not claim demurrage.

counterclaimed for its damages suffered as a result of having to unload the cars by alternate means and for extra unloading and reloading costs.

The case was tried to the Court, sitting without a jury, on April 10, 1980. Most of the facts were not in dispute. After due consideration, I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Southern Scrap Material Co., Ltd. is a Louisiana corporation with its principal office located in the Eastern District of Louisiana.

2. Neither plaintiff nor defendant owned, operated, controlled, or had any responsibility to maintain or repair the Florida Avenue Bridge.

3. Neither plaintiff nor defendant caused, contributed to, or was responsible for the damage done to the Florida Avenue Bridge.

4. Neither plaintiff nor defendant in any way interferred with the expeditious repair of the bridge by the Dock Board.

5. Public Belt Railroad Tariff No. 19, as supplemented by Supplement No. 2 thereto, was the Tariff in effect at the time of the accident. Plaintiff and defendant had entered into an Average Agreement, in accordance with the terms of the Tariff, that governs the calculation of demurrage charges for cars consigned to or from Southern Scrap.

6. In accordance with the provisions of the Tariff, when the cars could not be delivered to Southern Scrap's yard, plaintiff forwarded to defendant various constructive placement notices, all of which were received by defendant.

7. Plaintiff and defendant cooperated fully with each other in finding an alternate way to unload the cars. Defendant did unload by truck 76 of the 159 total cars detained across the canal.

8. Using car hire rates established by the Association of American Railroads, to which plaintiff is a party, plaintiff paid per diem charges in the amount of $20,214.39 to the owners of the various railcars consigned to or from plaintiff that were detained as a result of the accident.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1337 (Supp. II 1978).

2. The operations and rates of the Public Belt Railroad are governed by provisions of the Interstate Commerce Act and the rules and regulations of the Interstate Commerce Commission. 49 U.S.C.A. § 10501 (West Supp.1980).

3. A tariff confers rights and imposes duties as a matter of law. *See, e. g., In re Penn Central Transportation Co.*, 477 F.2d 841 (3d Cir.), *aff'd sub nom., United States Steel Corp. v. Trustees of Penn Central Transportation Co.*, 414 U.S. 885, 94 S.Ct. 231, 38 L.Ed.2d 137 (1973). Carriers, shippers, and consignees are bound by the provisions of a tariff duly filed by the carrier. 49 U.S.C.A. § 10761(a) (West Supp. 1980); *Farley Terminal Co. v. Atchison, Topeka & Santa Fe Railway Co.*, 522 F.2d 1095 (9th Cir.), *cert. denied*, 423 U.S. 996, 96 S.Ct. 423, 46 L.Ed.2d 370 (1975); *Union Barge Line Corp. v. Carter Construction Co.*, 56 F.R.D. 634, 636 (E.D.Ark.1972) *quoting with approval St. Louis, Southwestern Railway Co. v. Mays*, 177 F.Supp. 182 (E.D. Ark.1959); *see Southern Railway System v. Leyden Shipping Corp.*, 290 F.Supp. 742 (S.D.N.Y.1968). Where demurrage charges are prescribed by a tariff, and where a liability for such charges accrues, the carrier is under a duty to collect and the consignee is under a duty to pay them. The carrier and the consignee have no choice in the matter, and it is not a legitimate subject for compromise or settlement between them. *Id.*

4. Demurrage is properly assessed in accordance with the terms of a tariff even though the detention occurs

through no fault of the consignee, for a cause that is beyond the consignee's control. *Houston Belt & Terminal Railroad Co. v. Connell Rice & Sugar Co.*, 411 F.2d 1220 (5th Cir. 1969), *cert. denied*, 397 U.S. 908, 90 S.Ct. 905, 25 L.Ed.2d 89 (1970); *Port Terminal Railroad Ass'n v. Connell Rice & Sugar Co.*, 387 F.2d 355 (5th Cir. 1967); *Pennsylvania Railroad Co. v. Moore-McCormack Lines, Inc.*, 370 F.2d 430 (2d Cir. 1966). The assessed party may be relieved of liability only if (1) a specific provision of the tariff exonerates the consignee from liability for demurrage; (2) the delay is the fault of the carrier or those for whom it is responsible; or (3) the delay is caused by a vis major. *See Port Terminal*, 387 F.2d at 357; *Pennsylvania Railroad*, 370 F.2d at 432. The Tariff in this case excuses only delays caused by "[w]eather interferences, frozen or congealed lading, floods, earthquakes, hurricanes, or tornadoes" or strikes, none of which is applicable in this case. The delay was not the fault of plaintiff or anyone for whom it is responsible. The act of the M/V Miriam does not qualify as a vis major.

■■■■ 5. Impossibility of performance and other defenses grounded in the law of contract are not available as a defense to liability for demurrage. The Tariff and its terms govern the performance of the parties, not normal principles of contract law. *See In re Penn Central Transportation Co.*, 477 F.2d at 844; *Pennsylvania Railroad Co. v. Moore-McCormack Lines, Inc.*, 370 F.2d 430, 431–32 (2d Cir. 1966).

■■■■ 6. Unreasonableness of the Tariff is also not a proper defense to liability for demurrage. A court has no power to alter the terms of a duly published and filed tariff in order to make the terms reasonable; a request for relief of that type must be heard before the Interstate Commerce Commission. 49 U.S.C.A. § 10761(b) (West Supp.1980); *Pennsylvania Railroad*, 370 F.2d at 432–33; *see Union Pacific Railroad Co. v. United States*, 490 F.2d 1385, 1387, 203 Ct.Cl. 368 (1974).

■■■■ 7. By sending the notices prescribed in the Tariff and by constructively placing the cars, the Railroad fully complied with its responsibilities under the terms of the Tariff, which provide for constructive placement when the Railroad is unable to deliver cars for a cause beyond its control. The consignee, defendant in this case, is, therefore, liable to pay demurrage. *See Houston Belt & Terminal Railroad Co. v. Connell Rice & Sugar Co.*, 411 F.2d 1220 (5th Cir. 1969), *cert. denied*, 397 U.S. 908, 90 S.Ct. 905, 25 L.Ed.2d 89 (1970).

■■■■ 8. At common law, carriers are obligated to transport goods with reasonable diligence and to make delivery of goods within a reasonable time. *E. g., Gold Star Meat Co. v. Union Pacific Railroad Co.*, 438 F.2d 1270 (10th Cir. 1971). Defendant does not counterclaim for damages for delay as of the date of constructive placement of the cars; rather, it incurred costs because it was unable to unload the cars conveniently or promptly as constructively placed. Because the Railroad fulfilled its duty to deliver timely when it constructively placed the cars, it cannot be liable to the consignee for damages for delay. Furthermore, a carrier is not liable to a consignee for damages for delays due to occurrences that could not have been reasonably anticipated. *Gold Star*, 438 F.2d at 1272. Even if I were to view the delay in unloading the cars as a delay in delivery of the cars, plaintiff cannot be held to have reasonably anticipated that a ship would run into the bridge, ruining the only rail access into defendant's yard. It is not reasonable to expect the Railroad to provide an alternate route to each of its commercial customers to provide against the sort of rare circumstance as occurred in this case. *Cf. Union Pacific Railroad Co. v. United States*, 490 F.2d 1385, 203 Ct.Cl. 368 (1974) (majority tacitly rejected the position of the dissent that failure to provide adequate track to accommodate heavy traffic was the fault of the railroad). When difficulties arose, the Railroad acted in a reasonable manner in cooperating with Southern Scrap to find an alternate way to unload the stranded cars. I find no breach by the Railroad of its duties under the common law.

**50**

## CONCLUSION

For the above reasons, the Railroad is entitled to recover the full amount of the demurrage accruing under the Tariff, calculated at $55,540.00, not just compensatory damages measured by the per diem paid to the owners of the rail cars. Southern Scrap is not entitled to recover damages for costs incurred in unloading the 76 cars by truck or for its extra unloading and reloading costs.

Damages are awarded to plaintiff in the amount of $55,540.00. The counterclaim by defendant against the plaintiff is dismissed. The clerk will prepare a judgment consistent with this opinion.