CITY OF NEW ORLEANS By and Through the PUBLIC BELT RAILROAD COMMISSION OF the CITY OF NEW ORLEANS, Plaintiff-Appellee,

v.

SOUTHERN SCRAP MATERIAL CO., LTD., Defendant-Appellant.

SOUTHERN SCRAP MATERIAL CO., LTD., Petitioner,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.

Nos. 82–3759, 82–4328.

United States Court of Appeals, Fifth Circuit.

April 26, 1983.

Beard, Blue, Schmitt, Mathes, Koch & Williams, New Orleans, La., for defendant-appellant in No. 82–3759.

A.J. Schmitt, Jr., New Orleans, La., for defendant-appellant and petitioner.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiff-appellee in No. 82–3759.

Raymond J. Salassi and Edward H. Bergin, New Orleans, La., for plaintiff-appellee in No. 82–3759 and intervenor.

C.T. Williams, Jr., New Orleans, for petitioner in No. 82–4328.

Dennis J. Starks, Atty., John J. Powers, III, George Edelstein, U.S. Dept. of Justice, Washington, D.C., for respondents in No. 82–4328.

Berner, Liipfert, Bernhard, McPherson, L. John Osborn, Washington, D.C., for intervenors City of New Orleans by and through the Public Belt Rail Road.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The combined effect of the limited nature of our jurisdiction and Congress' delegation to district courts of exclusive jurisdiction to review certain agency decisions exacts scrupulous care from counsel seeking review of federal agency actions. An aggrieved party must take care not only to file its review petition within the proper time; it must also make sure its petition is filed in the proper court.

Southern Scrap, a consignee of freight, seeks review of an Interstate Commerce Commission decision requiring it to pay $55,540 in demurrage charges. The New Orleans Public Belt Railroad sued in federal district court to collect this demurrage from Southern Scrap. The district court ruled for the railroad but stayed the execution of its judgment pending the Commission's decision in an independent action, initiated by Southern Scrap after the judgment, that challenged the reasonableness of the demurrage charges. The Commission ruled against Southern Scrap, and the district court dissolved its stay. Southern Scrap then sought review of the Commission's decision in this court.[1]

The Commission contends that the action before it, although independently initiated, was transformed into a referral action under 28 U.S.C.A. § 1336(b) (West Supp. June 1982), which the district court would have exclusive jurisdiction to review. The Commission, therefore, asks us to dismiss this petition. We conclude that the district court did not adopt the Commission pro-

---

1. It has also appealed the district court judgment. This opinion considers only the agency review petition.

ceeding action as a referral action and did not, therefore, obtain exclusive review jurisdiction under section 1336(b). Because, however, we find that the action before the Commission was only "for the payment of money," we lack jurisdiction under 28 U.S.C. § 1336(a) (1976), and, therefore, dismiss the petition.

## I.

The Public Belt Railroad (Railroad) is an agency of the City of New Orleans, Louisiana. It provides rail service to Southern Scrap Material Company, Limited (Southern Scrap), over a bridge crossing the Inner Harbor Navigational Canal. That bridge is the only means of access by rail to the island on which Southern Scrap is located. On February 14, 1979, the *M/V Miriam* struck and damaged the bridge, interrupting rail traffic across it until March 23, 1979.

The Railroad, therefore, could not deliver freight cars to Southern Scrap until the bridge was repaired and was forced to hold railroad cars loaded with Southern Scrap's cargo until that time. It sued Southern Scrap in federal district court to recover demurrage charges [2] for the extra days the cars were detained.

In its answer and in a separate pretrial motion, Southern Scrap claimed the demurrage charges were unreasonable because the unloading delays were not its fault and it had done everything possible to minimize them. In both pleadings, Southern Scrap asked the court to stay the suit and refer to the Commission the question whether, under the circumstances, the demurrage charges were reasonable. Before the court could act on these motions to refer, however, Southern Scrap withdrew them.

The district court thereafter held that the Railroad was entitled to recover all the claimed demurrage charges.[3] It expressly noted that the reasonableness of the charges was a question beyond its jurisdiction: "A court has no power to alter the terms of a duly published and filed tariff in order to make the terms reasonable; a request for that type of relief must be heard before the Interstate Commerce Commission."[4] After judgment was entered, Southern Scrap filed motions for a new trial, to alter or amend the judgment, and to stay execution of the judgment while Southern Scrap sought a Commission determination that the demurrage charges were unreasonable.

Five months after the district court's judgment, while the post-judgment motions were still pending in the district court, Southern Scrap instituted an independent proceeding before the Commission challenging the demurrage charges. Two months thereafter, the district judge granted Southern Scrap's motion to stay execution of the judgment. He noted that the charges' reasonableness was challenged, and that "ordinarily [he] would refer this question to the Interstate Commerce Commission...." Because the question was already before the Commission, however, he stated that he would simply stay his ruling on Southern Scrap's post-judgment motions pending the Commission decision.

Almost two years passed before the Commission affirmed an administrative law judge's determination that Southern Scrap was liable for the full demurrage charges.[5] The Railroad then moved to dissolve the district court's stay. The district judge granted the Railroad's motion and denied Southern Scrap's motions for a new trial and to alter or amend the judgment.

---

**2.** "Demurrage is compensation charged by a carrier for undue detention of its equipment." *Island Creek Coal Sales v. ICC,* 561 F.2d 1219, 1220 n. 2 (6th Cir.1977). Demurrage charges have a double purpose. They are compensatory in that they secure compensation for the use of the detained car and the track it occupies. They also contain a punitive element designed to promote efficiency by deterring unnecessary detentions. *Id.*

**3.** *City of New Orleans v. Southern Scrap Material Co.,* 491 F.Supp. 46 (E.D.La.1980).

**4.** 491 F.Supp. at 49 (citations omitted).

**5.** Southern Scrap Material Co., No. 37662 F (ICC August 6, 1982).

Southern Scrap appealed from the district court judgment and petitioned for review of the Commission's determination.[6] The Commission challenges our jurisdiction to hear the petition for review.

## II.

"We are, of course, a court of limited, statutory jurisdiction...."[7] Our jurisdiction to review Commission orders originates in 28 U.S.C.A. § 2342(5) (West Supp.1982), which vests in the federal courts of appeals exclusive jurisdiction to review "all rules, regulations, or final orders of the Interstate Commerce Commission made reviewable by section 2321 of this title...." Section 2321 provides that all proceedings to enjoin or set aside Commission orders shall be brought in the courts of appeals, "[e]xcept as otherwise provided by an Act of Congress...." 28 U.S.C. § 2321(a) (1976).

The Commission claims this petition for review falls within an exception to this general rule. 28 U.S.C.A. § 1336(b) (West Supp. June 1982) provides that, when a district court *refers* an issue to the Commission, it retains exclusive jurisdiction to review the resulting Commission decision.[8] Although Southern Scrap instituted this Commission proceeding independently of the district court action, the Commission claims it became a referral case when the district court stayed its proceeding pending the Commission decision.

■ The primary jurisdiction doctrine requires that "issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by [the] Act" be submitted initially to the Commission for determination.[9] Therefore, a district court trying a case arising under the Interstate Commerce Act must, if presented with such an issue, stay its proceedings and refer the case to the Commission.[10]

Until 1964, the district court that referred a question to the Commission did not have automatic jurisdiction to review the resulting decision. Instead, the Commission decision was subject to review in the district in which the party bringing the action maintained its residence or principal office,[11] which might or might not be the referring district. In many instances, this not only prevented the court most familiar with the issues from reviewing the Commission action; it required the referring court to maintain the original action on its docket until the Commission decision was finally reviewed.[12] The Senate noted that "one such case has been on the court's docket for 10 years while full review of the Commission's order is being effected."[13] Congress, noting that the existing procedure was "cumbersome and inefficient,"[14] passed section 1336(b) to "provide a more streamlined procedure for judicial review of questions that invoke the primary jurisdiction of the

---

6. Southern Scrap's direct appeal from the district court judgment was docketed under number 82–3759. This petition for review was docketed under number 82–4328. On January 20, 1983, we consolidated the two proceedings.

7. *City of Miami v. ICC,* 669 F.2d 219, 221 (5th Cir.1982); *accord Huckeby v. Frozen Food Exp.,* 555 F.2d 542, 545 (5th Cir.1977).

8. 28 U.S.C. § 1336(b) provides in relevant part:
   When a district court ... *refers* a question to the Interstate Commerce Commission for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission arising out of such referral.
   (Emphasis added.)

9. *ICC v. Atlantic Coast Line Ry.,* 383 U.S. 576, 579, 86 S.Ct. 1000, 1004, 16 L.Ed.2d 109, 113 (1966); *United States v. Western Pac. R.R.,* 352 U.S. 59, 65, 77 S.Ct. 161, 166, 1 L.Ed.2d 126, 132 (1956).

10. *ICC v. Atlantic Coast Line Ry.,* 383 U.S. at 579, 86 S.Ct. at 1004, 16 L.Ed.2d at 113.

11. *See* S.Rep. No. 1394, 88th Cong., 2d Sess., *reprinted in* 1964 U.S.Code Cong. & Ad.News 3235, 3236. *See also Keller Ind. v. United States,* 449 F.2d 163, 166 (5th Cir.1971).

12. *Keller,* 449 F.2d at 166.

13. S.Rep. No. 1394, *supra* note 11, at 3236.

14. *Id.*

[Commission] and are referred to it for a preliminary determination." [15]

With this history in mind, we turn to the question of whether the proceeding before the Commission was a section 1336(b) referral. It certainly did not begin as a referral action. Southern Scrap initiated the action independently of the proceedings in the district court. It had filed a motion to refer the issue to the Commission, thus indicating both that it was familiar with the procedure and that it had drawn the trial judge's attention to the possibility of referral. Nor did the district judge treat the Commission proceeding as a referral. His order staying the judgment indicated that he was not referring the case, although he would ordinarily have done so. He did not feel obliged to maintain the case on the court's docket pending full review of the Commission decision. He dissolved his stay immediately upon learning of final action by the Commission.

█ The Commission, nevertheless, argues that whether a case has been referred is a question of substance, not form.[16] They argue that the case became a referral action when the district court stayed its judgment. Transforming an independently-initiated proceeding into a section 1336(b) referral action has significant procedural consequences. It requires that review of the Commission action be sought in the referring court within ninety days of the Commission's decision.[17] In view of this, a district judge who intends to refer a case should make it clear that he is doing so. We do not doubt that the district court has authority to adopt a proceeding pending before the Commission as a referral under section 1336(b). But if it is the judge's intention to do so, he should make it reasonably clear to the parties, the Commission, and the appellate courts that such an adoption is taking place. The district judge here manifested no such intention; indeed, all we can glean of his purpose from the record is to the contrary.

Requiring that referral be either explicit, or at least clearly implied, is consistent with the legislative history of section 1336(b). If the district judge concludes that treating an already-initiated Commission action as a referral would expedite final resolution of the cases, he may retrospectively refer the case to the Commission. In other cases, like this one, the judge may simply allow review of the proceeding to take place in the forum that would ordinarily review such a decision.

Our holding does not exalt form over substance. When a district court affirmatively alters the normal course of review for a Commission proceeding, making this change of course clear is no mere formality. It is a simple, practical way to minimize confusion and procedural uncertainty.

█ Because the district court in this case did not treat Southern Scrap's independently-initiated Commission proceedings as a section 1336(b) referral action, we reject the Commission's claim that section 1336(b) requires a finding that we lack jurisdiction to hear Southern Scrap's petition for review.

### III.

Another exception to our general power to review Commission decisions is fixed by 28 U.S.C. § 1336(a) (1976), which provides that district courts have jurisdiction to review Commission orders relating only to the payment of money.[18] In *United States v.*

---

**15.** *Keller,* 449 F.2d at 166 (quoting *McLean Trucking Co. v. United States,* 387 F.2d 657, 659, 181 Ct.Cl. 170 (Ct.Cl.1967)).

**16.** *See Leonard Bros. Trucking v. United States,* 301 F.Supp. 893, 895 n. 3, 898 (S.D.Fla. 1969) (three-judge district court) ("the inquiry . . . should focus on the question whether a court familiar with an issue has deferred its proceedings pending an initial determination of the issue by the Commission"). *See also*

*Northwestern Wire & Steel Co. v. ICC,* No. 80 C 1230 (N.D.Ill. Feb. 3, 1983).

**17.** *See* 28 U.S.C. § 1336(c) (1976).

**18.** 28 U.S.C. § 1336(a) provides:
Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, in whole or in part, any order of the Interstate Commerce

*ICC,* 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949), the Supreme Court explained the statutory scheme for review of Commission orders. At the time that case was decided, in 1949, decisions that today would be reviewed in the courts of appeals were reviewed by three-judge district courts.[19] The Court noted that Congress invested three-judge district courts with authority to review Commission orders to facilitate the "expedition of final determination of the validity of certain types of Commission orders." *Id.* at 441, 69 S.Ct. at 1419, 93 L.Ed. at 1463. "This expedition was sought for orders of national or widespread interest, such, for example, as railroad rate orders. Congress saw the necessity for an accelerated appellate procedure to prevent railroads from nullifying the effect of such orders in prolonged litigation." *Id.* Because direct appeal to the Supreme Court was available from the decisions of three-judge district courts, this method provided the desired expedition.

By contrast, the Court explained, section 1336(a) reflected Congress' conclusion that "orders relating merely to the payment of money are not likely to be of sufficient importance to justify use of the three-judge procedure..." *Id.* at 442, 69 S.Ct. at 1419, 93 L.Ed. at 1463. "[S]uch orders are not of sufficient public importance to justify the

> Commission, and to enjoin or suspend, in whole or in part, any order of the Interstate Commerce Commission for the payment of money or the collection of fines, penalties and forfeitures.
>
> Cases falling within the purview of section 1336(a) are within the exclusive jurisdiction of the district courts. *See Pullman-Standard v. ICC,* 705 F.2d 875, at ——, No. 82–1051 (7th Cir. March 11, 1983); *Consolidated Rail Corp. v. ICC,* 685 F.2d 687, 692–93 n. 12 (D.C.Cir. 1982); *Genstar Chemical Ltd. v. ICC,* 665 F.2d 1304, 1307 (D.C.Cir.1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1750, 72 L.Ed.2d 161 (1982).

**19.** In Pub.L. No. 93–584, 88 Stat.1917 (1975), Congress substituted the federal courts of appeals for three-judge district courts as the forum for review of most Commission decisions. For a discussion of this change, see H.Rep. No. 93–1569, 93d Cong., 1st Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 7025. *See generally Consolidated Rail Corp.,* 665 F.2d at 692–93; *Genstar Chemical,* 665 F.2d at 1307; *Island Creek Coal Sales v. ICC,* 561 F.2d 1219, 1221–22 (6th Cir.1977).

accelerated judicial review procedure." *Id.* Therefore, Congress had enacted section 1336(a) to provide for single district judge review of Commission orders involving only the payment of money.

The federal circuits differ on exactly what type of Commission decision falls under section 1336(a). The District of Columbia Circuit holds that Section 1336(a) extends to any case in which the parties seek only monetary relief from the Commission.[20] Although two of its earlier decisions appeared to reject this view,[21] the Seventh Circuit recently explicitly adopted the position taken by the District of Columbia Circuit.[22]

Those courts would dismiss this appeal for lack of jurisdiction simply because Southern Scrap sought from the Commission only relief from monetary demurrage charges.

The Sixth Circuit, by contrast, holds that the question cannot be resolved by looking simply to the relief sought. It holds that the court of appeals has review jurisdiction so long as the petitioner, in addition to seeking monetary relief, also challenges the propriety of Commission action or otherwise raises issues of significant public importance.[23] The Third Circuit shares this view.[24]

**20.** *See Consolidated Rail Corp.,* 685 F.2d at 696–97; *Genstar Chemical,* 665 F.2d at 1307–08; *Aluminum Co. v. ICC,* 553 F.2d 1268, 1270–71 (D.C.Cir.1977).

**21.** *See Central Illinois Public Service Co. v. ICC,* 659 F.2d 820 (7th Cir.1981); *Chicago & N.W. Transp. Co. v. United States,* 574 F.2d 926 (7th Cir.1978).

**22.** *Pullman-Standard v. ICC,* 705 F.2d 875, No. 82–1051 (7th Cir. March 11, 1983). The Court held that "[t]he nature of the ICC's order, not the difficulty, novelty, or general importance of the legal questions raised by the order, controls the question of review jurisdiction." —— F.2d at —— (quoting *Consolidated Rail Corp.,* 685 F.2d at 694).

**23.** *See Island Creek Coal Sales Co. v. ICC,* 561 F.2d 1219 (6th Cir.1977).

**24.** In *Empire-Detroit Steel v. ICC,* 659 F.2d 396, 397 (3d Cir.1981), the Third Circuit held that

We have never addressed the question.[25] Nor is it necessary for us now to take a position in the conflict. This case is governed by section 1336(a) even under the narrower view of that provision taken in the Sixth and Third Circuits. In *Island Creek,* the Sixth Circuit found that the case merited review in the court of appeals, although it involved only monetary relief, because the petitioners "ask[ed] for more than money. They challenge[d] the fundamental power of the Commission to issue [the challenged order] and the method used to promulgate the demurrage increases." 561 F.2d at 1222.

Southern Scrap's Commission action did not raise any such broader issue. It sought relief from the penalty portion of the demurrage charge because Southern Scrap was not at fault with respect to the delay in unloading the Railroad's cars.[26] The record of proceedings before the Commission indicates that the main issue at each stage of the action was whether Southern Scrap had exercised due diligence in minimizing the delay in unloading the Railroad's cars.[27]

Thus, the case seems to be exactly what the Supreme Court contemplated when it noted that orders relating only to the payment of money "are not of sufficient public importance" to warrant an expedited review procedure. The controversy centered on the application of settled law to a unique factual circumstance. "[T]he order at issue directly affects only the rights and obligations of [the parties] and has no binding force on anyone not a party to the controversy." [28]

■ We hold that judicial review of this Commission decision is governed by section 1336(a). The district court, therefore, has exclusive jurisdiction to review it.[29]

## IV.

The statutory limitations on our jurisdiction require the dismissal of the petition for review, case 82–4328.[30] Whether Southern Scrap may obtain review of the Commission's decision in the district court proceeding it has instituted is a question that must be presented in the first instance to that court. Although we conclude that the Commission decision was the type of order properly reviewed under section 1336(a), we express no other opinion as to whether Southern Scrap's district court action was properly initiated. Nor do we express an opinion as to the merits of that case.

For these reasons, the petition for review is DISMISSED for lack of jurisdiction.

"review of orders denying reparations on legal or policy grounds is available by petition for review in the courts of appeals." *See also Monongahela Power Co. v. ICC,* 640 F.2d 504 (4th Cir.), *cert. denied,* 454 U.S. 824, 102 S.Ct. 111, 70 L.Ed.2d 97 (1981).

25. *But see Coca-Cola Co. v. Atchison, T. & S.F. Ry.,* 608 F.2d 213, 215 n. 4 (5th Cir.1979) ("In reparations actions the district court has jurisdiction to initially review decisions of the ICC") (citations omitted).

26. The Commission has ruled that a shipper may be entitled to a refund of the penalty portion of a demurrage charge if: (1) it did not proximately cause the detention of the cars which led to assessment of the demurrage charge; and (2) it exercised due diligence to avoid or abate the demurrage charge. *See Prince Mfg. Co. v. Norfolk & W. Ry.,* 356 I.C.C. 702 (1977).

27. One issue of arguably greater public importance was raised. The Commission noted that, even if Southern Scrap had exercised diligence, it would not be entitled to relief because of the average agreement contained in the tariff. However, this was not the main issue. It was only an alternative basis for the Commission's ruling. We, therefore, do not think it injected the issue of great public importance necessary, even under the Sixth Circuit's test, to remove this case from § 1336(a).

28. *Genstar Chemical,* 665 F.2d at 1308.

29. We note that on March 16, 1983, Southern Scrap filed suit in the United States District Court for the Eastern District of Louisiana seeking review of the Commission decision.

30. This does not, of course, affect the appeal in 82–3759.